VERMONT CENTRAL RAIL ROAD COMPANY *v.* CHESTER BAXTER.

</div>

The commissioners need not be called upon to appraise damages for materials taken by the Vermont Central Rail Road Co., without the limits of their survey, under section sixteen of their charter,* for the construction of their road, until after the materials are ascertained.

The commissioners have jurisdiction to determine the damages for acts of the corporation, where those acts are such as the corporation, by their engineers, agents, or workmen, may rightfully do, by virtue of their charter, and the parties cannot agree upon the amount of damages; and it makes no difference, in this respect, whether the corporation admit or deny their liability.

The corporation have power, under section sixteen of their charter, when necessary for the construction of their road, to take stone from land contiguous to the line of their survey, and to use land for the purpose of cutting and hewing stone thereon.

---

* Which is in these words,—" Said company may, by their engineers, agents, or workmen, with such teams and carriages and tools, as they may find convenient, enter upon any lands contiguous to said rail road, or the works connected therewith, to dig, blast and carry away and use such stone, gravel, earth and other materials, as may be necessary for building or repairing said road ; doing as little damage thereby, as the nature of the case will admit; and in case damage shall be claimed by the owner of land thus entered upon, and for the stone, gravel and other materials carried away as aforesaid, and the owner and said company do not agree upon the sum to be paid therefor, the same shall be assessed by commissioners in the manner before prescribed in this act ; and all persons, aggrieved by any decision of said commissioners, shall have the right to appeal, as herein before provided." Acts of 1843, p. 49.

Vt. Central Rail Road Co. *v.* Baxter.

The power of the corporation to take the land and other materials adjoining the
line of the road, for the purpose of constructing their road, is conferred upon
them by their charter and is as necessary to exist in and be exercised by all
the contractors on the road as by the corporation. This power, to be exercised
within reasonable limits and in a proper manner, is necessarily delegated from
the corporation to the contractor, and for this purpose the contractor is the agent
of the corporation, and the corporation is liable to the land owner, for the dam-
ages occasioned by the exercise of this power on the part of the contractor.

And the liability of the corporation to the land owner, in such case, is not affected
by any stipulation in the agreement between the corporation and the contractor.

The commissioners, who are called upon to assess damages in such case, may
award costs to the land owner.

PETITION for a writ of *certiorari* to the commissioners appointed
to appraise damages for land and materials taken by the Vermont
Central Rail Road Company.

The petitioners alleged, that the defendant applied to the com-
missioners to appraise and award damages, which had accrued to
him on land held by him in his own right and as administrator of
Hiram Shepard, and that the commissioners, after giving due notice
to the parties, had met, and, upon hearing, had made their award.
The award was recited in the petition, and was, in substance, as
follows ;—that the corporation had contracted with Sewall F. Bel-
knap to construct their rail road, by a written agreement, a copy of
which was annexed to the award ; that it did not appear, that Bax-
ter had knowledge of the provisions of this contract ; that Belknap,
for the purpose of procuring stone to build culverts for the road, by
his servants, agents and workmen, entered upon the land of Baxter,
and upon the land of Shepard, contiguous to the rail road, and laid
open the fields, and blasted and drew away stone, and occupied the
land for hewing stone, and used the stone in the construction of the
rail road, claiming to do so by virtue of the provisions of the charter
of the corporation ; that the corporation denied their liability to pay
for the damages so occasioned, and the parties being unable to agree
upon the amount of damages, the commissioners, upon the applica-
tion of Baxter, after giving due notice and hearing the parties,
awarded to Baxter $63,00, as his damages, viz., for stone taken
from the land of Baxter $28,00,—for laying open his fields and

drawing stone across his land, $10,00,—for the use of land for cutting and hewing stone, $12,00,—and for stone taken from the land of Shepard, $13,00; and that they allowed to Baxter $10,98 for his costs in the matter. It was farther alleged in the petition, that the petitioners did not authorize or direct the acts committed by Belknap upon the land of the defendant, but that Belknap, in so doing, was acting for himself, under the stipulations in the contract between him and the corporation ; and the petitioners denied, that the commissioners had authority to make the award in question.

The fourteenth specification, in the contract between the corporation and Belknap was in these words,—" The price per yard for masonry shall in every case include the furnishing of all materials, and the transportation of the same to the place where wanted, the cost of all scaffoldings, centerings, &c., and the preparation of all roads and bridges that may be required, in order to transport the stone, or other materials, to the work." The seventeenth specification was in these words,—" The corporation will assure a right of way over the premises of land owners, so far as may be necessary to afford the contractors convenient access to their work ; but the contractors shall be responsible for all damage done to such premises, in consequence of leaving gates or fences open, and also for all depredations upon fences, wood lots, or other property, by the workmen in their employ." By the sixth specification it was provided, that " In cases where the quantity of materials taken from the excavations in any section shall be not sufficient for the formation of the requisite embankments, the deficiency shall be supplied by materials taken from the adjacent grounds, at such places as the engineer may designate." By the fourth specification it was provided, that in case " land or gravel cannot be obtained from land holders on terms satisfactory to the corporation, then such sections shall be finished off according to such grades, as the engineer shall establish."

*Peck & Colby* and *Tracy, Converse & Barrett* for petitioners.

The award shows, that no such entry, or taking of materials, as the charter contemplates was made or done by the corporation. Belknap was neither engineer, agent, or workman, of the corporation, but a contractor, having no other relation to the corporation,

than such as was created by the contract; and by the terms of the contract the price for masonry was to include the *furnishing of all materials.* The claim, or pretence, of Belknap, or his workmen, to act under the charter, conferred no authority to enter and take and use the stone, and cannot bind the corporation; third persons deal with a professed agent at their peril, and cannot charge the supposed principal by reason of ignorance or want of information in respect to the pretended agency. Nor can it be said, that the corporation have become liable to Baxter, by reason of adopting such agency and enjoying the benefit of the materials taken by Belknap. They had no knowledge, or means of knowing, that Belknap procured the materials by claiming to represent the company, nor of the fact, that he procured any of Baxter; and the ratification of the act of an agent, previously unauthorized, must, in order to bind the principal, be with a full knowledge of all the material facts. *Owings* v. *Hull,* 9 Pet. 606. *Davidson* v. *Stanley,* 2 M. & G. 721. *Bell* v. *Cunningham.* 3 Pet. 69. Paley on Agency 172.

By the fourth and sixth specifications all questions as to borrowing *earth,* or *gravel,* are deferred to the order of the corporation, and their engineer, and without such order the contractor is not authorized to take materials without the limits of the section. In regard to *stone,* procured off the road, the contract has no provision, subjecting the selection to the engineer, as that, by the fourteenth specification, was to be furnished by the contractor. If, then, the corporation are liable for stone thus taken and used by a contractor, it is not by force of the contract, in its terms, but from the fact that he was contractor and had agreed to construct the road. The argument, that the corporation, by contracting with Belknap to build the road, thereby gave him the rights, which the corporation have to take property without the consent of the owner, and to render the corporation chargeable, is certainly opposed to settled and well established principles. If this be so, the corporation is also liable for the debts and acts of *sub-contractors,* for all materials, and even perhaps for the wages of the laborers. The inconveniences and utter impracticability of such a doctrine are ample reasons against its reception. For a class of injuries by the fault, or negligence, of a sub-contractor, or his servant, the law is stringent enough; *Bush* v. *Steinman,* 1 B. & P. 409; but even the doctrine of this case is

greatly shaken in *Quarman* v. *Burnett*, 6 M. & W. 499 ; *Rapson* v. *Cubitt*, 9 M. & W. 710. Dunlap's Paley on Ag., notes, 297.

If the taking by Belknap was a tort, and he the servant of the corporation, they are not liable. Dunlap's Paley 306. *Schmedt* v. *Blood*, 9 Wend. 268. *Foster* v. *Essex Bank*, 17 Mass. 479. 6 Com. Dig. 393.

The right of taking materials under the charter is a *privilege* in derogation of the rights of the owners of the property, and therefore not to be extended by implication ; it is a right *personal* to the corporation, and not to be transferred.

The commissioners have no authority to determine a question like this ; their powers are restricted to the single inquiry, as to the " sum to be paid," and they are called upon only when the " parties do not agree " upon that question, and that only ; they are not a tribunal for litigation, when the corporation deny their liability and repudiate all connection with the matter.

The commissioners have no authority to award costs to the land owner.

*W. C. French* and *O. P. Chandler* for defendant.

The contract between the corporation and Belknap had no effect as to third persons, who had no knowledge of its provisions. Belknap claimed to enter upon the land and take the stone by virtue of the provisions of the charter. He was the general agent, for the purpose of building the road ; and land owners could in no way resist his so entering upon their lands, as the charter gave him the right. His acts, as general agent for the purpose of building the road, bind the corporation, whatever may have been the *private* contract between him and the corporation. 2 Kent 624. No action could have been maintained against Belknap for taking the stone. *Calking* v. *Baldwin*, 4 Wend. 667. The corporation are equally liable for laying open fields and drawing stone across them and for damages in consequence of hewing the stone upon the land. It was necessary, for the purpose of enabling Belknap to construct the road. *Dodge et al.* v. *Co. Com'rs of Essex*, 3 Met. 380. *Stevens* v. *Prop'rs Middlesex Canal*, 12 Mass. 466. *Stowell* v. *Flagg*, 11 Mass. 364.

The opinion of the court was delivered by

REDFIELD, J.   This is a petition to this court for a writ of *certiorari* to the commissioners of the Vermont Central Rail Road Co. for appraising land damages, to certify to us a judgment, or appraisal, which they made against the company for damages in taking stone, drawing them across land, and hewing them on land of the petitionee,—also allowing him costs,—that its correctness may be determined by this court.    If their proceedings were substantially correct, we should refuse the writ.    We must therefore inquire into their legality.    We must be very brief, in regard to most of the points raised.

1. We think the commissioners need not be called out to appraise damages under the sixteenth section, for materials taken to build the road, out of the limits of the survey, until after the materials are ascertained.   This seems to us to be the only practicable mode of proceeding in such case, if they would come at a reasonable and just determination in regard to such damages.    And it is admitted such, from necessity, has been the practical construction put upon this section.

2. We think, if the company are liable at all in this case, under the facts set forth in the award of the commissioners, it is a proper case for the determination of the commissioners.   As is said by Ch. J. SHAW, in *Dodge v. County Com'rs of Essex,* 3 Metc. 380, if the company keep " within the scope of their authority, they are not wrong doers," but are justified by their act of incorporation, and liable to pay damages in the mode there pointed out.   We see no good reason, why the right to refer this question to the determination of the commissioners should depend upon the company admitting their liability, and differing only as to the *amount* of damages, to which the land owner is entitled.   It seems to us, that such a rule would be liable to very great abuse.   If the company, by their agents, or servants, have so conducted, as to be in fact liable for damages, and the parties cannot agree upon them, then the commissioners are constituted the only proper tribunal, in the first instance, to determine that question, and either party may apply to them and set their action in motion.

Of course it is not intended to say here, that the jurisdiction of

Vt. Central Rail Road Co. *v.* Baxter.

the commissioners extends beyond those cases, where the company are rightfully subjected to damages, under the charter provisions, for acts which they may rightfully do, by virtue of the authority therein conferred. Beyond that, if they incur liabilities, either for torts, or by way of contract, they are liable like other persons.    So that the question, how far this matter comes within the jurisdiction of the commissioners, depends upon the prior question, whether the liability is one for an act, which they had the right to do by the charter, or is a mere tort.    And as it seems to be supposed on all hands, that the act itself is clearly within the charter rights of the company, if done in such a manner, as to be the act of the company, the questions of liability and jurisdiction are identical.*

3.  In regard to this question, which is the important inquiry in the case, no doubt, it does not appear to us, that a determination upon the general principles of the law of agency wholly reaches the true merits involved.    If it were so, I could have no hesitation in saying, the company are not liable for the act of Belknap.    One who simply lets a job of work to another is not ordinarily liable, I think, for the acts of that other, whether of tort, or contract, unless there be something in the contract, or the conduct of the work, whereby the act becomes that of the principal,—although there is, I know, some apparent conflict in the cases, not important to be here examined.

*It is clear,* that these stone were not taken by any express direction of the company, nor for their benefit, as between them and Belknap. And if Baxter had the legal right to resist Belknap, so that he must be considered as having acquiesced in what Belknap did, without informing himself of the nature of the contract between Belknap

NOTE BY REDFIELD, J.  Since the decision of this case, it has been somewhat questioned, by some, whether the company itself has any right to take materials for building its road, beyond the limits of the survey.  That question was not made or considered by the court, in this case, and, if it be a question, is one involving constitutional considerations of a character which might require serious discussion and grave inquiry.  But at present I should be inclined to suppose it must depend upon the *necessity* for taking such materials, and that it is therefore a question of fact mainly.  But in a case like the present, where the land owners preferred the responsibility of the corporation, they would naturally decline contracting with the contractors for building the road, which would create the necessity, contemplated in the charter.

and the company, it is, in my opinion, his own folly, and he is in the same position, as if he had notice of the contract. For he no doubt knew enough to put him upon inquiry, and is therefore affected with the notice of such facts, as he might have ascertained upon reasonable inquiry. And if it be viewed as a mere tort of Belknap, it is very questionable, in my mind, how far, upon common principles, the company could be made answerable for the act, as being in effect the act of their agent. Some of the cases, perhaps, go that length. But those entitled to the most consideration seem to stop somewhat short of that point. It would seem from some of the recent cases,—*Rapson* v. *Cubitt*, 9 M. & W. 709, and cases there referred to, and *Millegin* v. *Wedge*, 12 Ad. & El. 177,—that the relation of master and servant must exist, in order to make one liable for the torts of the other, unless there is an express or implied permission to do the act. The case of obstructions on one's premises, of the nature of nuisances, by which injury occurs to others, rests upon different grounds.

But we think the case before us is entitled to a different consideration. The power conferred upon railroad corporations, to take the land and other materials adjoining the line of the road, for the purpose of constructing the road, is one in derogation of the ordinary rights of land owners, and one which could only be conferred by the legislature by virtue of the right of eminent domain, and because it is necessary to the reasonable exercise of sovereignty. And we think it is one, which is as necessary to exist in and be exercised by all the contractors on the road, as by the corporation. Indeed, it is only for that purpose that it is important. And whether the corporation construct their road themselves, or by contract with others, is unimportant. This is a power, which must go with the contract, which is indispensable to the building of the road, which must be understood to go with the contract, which is in fact never exercised by the board of directors of the company, but always by the builders, under the supervision of the engineers, and which must of course be exercised only within reasonable limits and in a proper manner. The very words of the statute show by whom it was expected this power would be exercised,—" by *engineers, agents, or workmen.*"

This, then, being a power, which was conferred by charter upon

Vt. Central Rail Road Co. *v.* Baxter.

the company, and which of necessity pertains to the contractors, as a necessarily delegated office from the company to the contractor, and which they must expect him to exercise, it is the same, as if in express terms it were stipulated, that he may exercise it. For this purpose, then, the contractor is the agent of the company. And as the proprietors of the land cannot resist the contractor, because he is clothed with the authority of the company, it would be hard, if they could be compelled to look to any and every contractor, to whom the company might see fit to turn them over. Any stipulation between the contractor and the company is of no importance to the land owners. It is merely a private arrangement between the company and contractor, as to the mode of coming at the price of the work.

This subject may be very well illustrated, by supposing that the land owners had, *by contract*, conferred upon the company the same rights and privileges, as to building their road, and upon the same conditions, stipulated in the charter, and the company had let the building of the road to this contractor, and he and the land owners had proceeded, in all respects, as they now have. There could be no doubt, I apprehend, that the contractor would have acquired the rights of the company, as to taking and working materials for the road, and, as between himself and the company, would be bound to pay for them; but the land owners might well claim to look to the stipulations in their own contract, and could not, without their own consent, be turned over to the contractor. This illustration, which, as far as we can see, is every way a fair one, brings the whole subject within a very narrow compass, and renders it sufficiently simple.

Costs seem to be given by the statute, and we do not see that they are unreasonable.

The petition is dismissed with costs.