THE HOUSTON AND GREAT NORTHERN RAILROAD CO. v. R. G. MEADOR, ADM'R.

1. PRINCIPAL AND AGENT—NEGLECT OF A DUTY.—Where a person is bound to perform an act as a duty, he intrusts its performance to another at his peril, and upon failure of such person to perform it, whether he stood in the relation of contractor or of servant, the person on whom the duty rests is liable for such failure or neglect.

2. EMINENT DOMAIN—RIGHT OF WAY.—Where the State, by virtue of the right of eminent domain, authorizes the appropriation of private property, such a right can only be exercised under the protection of the legislative grant, and under the conditions and liabilities which the statute attaches to the grant.

3. DUTY IMPOSED BY GENERAL RAILROAD ACT TOUCHING INCLOSURES.—The statute (Paschal's Dig., art. 4925) evidently implies that railroads are to be so constructed as to preserve inclosures unimpaired.

4. SAME—NEGLECT OF CONTRACTOR OF DUTY CREATES LIABILITY OF THE RAILROAD COMPANY.—The duty of placing stock-guards,

preserving or supplying the fences, so far, at least, as on the right of way, and protecting the inclosure from injury, in the construction of a railroad, is a duty from the railroad company to the proprietor of the inclosures through which the road passes, annexed by statute to the privilege granted the corporation; and for the failure to perform such duty the railroad company is liable, though resulting from the negligence of a contractor in the construction of the road.

5. Same.—A duty to the public or to an individual cannot be devolved upon a contractor, and a judgment against a railroad company for damages to growing crops, injured by the negligence of a construction contractor and his servants, held to be proper.

6. Same—Consent.—The consent given to the construction of a road would not relieve the railroad company from the duties prescribed by the statute granting them their right of way, touching inclosures.

Appeal from Smith. Tried below before the Hon. M. H. Bonner.

The facts are stated in the opinion.

*Jones & Henry*, for appellant.—We proceed to the discussion of the legal question, whether Sheppard & Henry, the contractors, and their servants, were the servants of defendant, and the defendant therefore liable to plaintiff for the injuries to plaintiff's intestate's crops of grain, occasioned by the negligence of Sheppard & Henry and their servants while constructing the road through plaintiff's intestate's premises?

Do the facts show that Sheppard & Henry were contractors, employed by defendant to construct its road through plaintiff's intestate's premises, and did they have an independent control of the work while they were so constructing it? If so, then they were not the servants of defendant, and defendant is not liable for the acts of negligence committed by them and their servants while they were constructing defendant's road through plaintiff's intestate's premises.

In reference to the liability of railroad companies for the omissions of contractors and their agents, it is said, in 1 Redfield on the Law of Railways, sec. 129, p. 503: "The general doctrine seems now firmly established, that the company

is not liable for the acts of the contractor's servant, where the contractor has an independent control, although subordinate, in some sense, to the general design of the work. The distinction, although but imperfectly defined for a long time, has finally assumed definite form, that one is liable for the act of his servant, but not for that of a contractor or of the servant of a contractor." In note 1 to the above authority a number of cases are referred to by the author in support of the law as laid down by him.

In Pierce on American Railroad Law, p. 235, in speaking of the responsibility of railroad companies for the torts of contractors and their servants, the law is thus stated: " The company is, in general, responsible for the torts of only such persons as sustain towards it the relation of agents or servants. It is important to ascertain what circumstances create this relation, so as to determine its liability. The relation of principal and agent, of master and servant, does not subsist when the employé exercises an independent employment and is not under the immediate direction of the employer."

In Shearman & Redfield on Negligence, sec. 79, it is said: " It appearing, from the definition which we have given of a contractor, that he is not the agent or servant of his employer in relation to anything but the specific results which he undertakes to produce, it follows that his employer is not responsible to third persons for his negligence or for the negligence of his servants, agents, or sub-contractors in the execution of the work." (See also sec. 81.)

We think the law on this subject, announced in the text-books to which reference has been made, is fully sustained by the current of judicial decisions on the subject. (Steele *v*. Southwestern Railroad Co., 16 C. B., 550; Hilliard *v*. Richardson, 3 Gray, 349, 352; Young *v*. New York Central Railway, 30 Barb., 229; Kelly *v*. New York, 11 N. Y., 432; Cincinnati *v*. Stone, 5 Ohio St., 38; Barry *v*. City of St. Louis, 17 Mo., 121; Railroad Co. *v*. Hanning, 15 Wall., 649; Eaton *v*. European and Northern Railway Co., 8 Am. Law.

Rep., 430; Houston and Great Northern Railway Co. *v.* Van Bayless, decided by Texas Court of Appeals in 1876.)

That there are some cases that seem to be in conflict with the law as laid down in the cases to which we have referred, we admit; but we doubt if any cases can be found that conflict with the authorities, where the injuries charged are the results of mere acts of omission or negligence in the performance of a work already commenced, and not of a trespass in going on the premises in the first instance.

In the case before the court, according to the testimony, the injury to plaintiff's intestate's crops of small grain was caused by the contractors and their servants in letting down the fences near the road they were constructing and neglecting to put them up, and in not keeping the gates opening into the close, that had been erected by plaintiff's intestate himself for the purpose of keeping stock out of his close while the road was being constructed through it, closed, when passing out of and into the close.

If these were such acts as the contractors and their servants were authorized to do—we mean the acts of negligence mentioned—by the charter of defendant, then defendant would be liable for them, though Sheppard & Henry acted under a contract with it and had an independent control of the road they were constructing; but otherwise, if the acts of negligence were violative of defendant's charter. (Pierce on Am. R. R. Law, p. 241.)

It cannot be pretended that the acts of negligence by which plaintiff's intestate's property was damaged are authorized by defendant's charter. We take it, then, that the facts in this case show that it is within the general rule, in regard to the liability of railroad companies for the acts of omission or negligence of their contractors and their servants, laid down in the text-books to which we have referred, and not an exception to it. We submit, that we have shown that the fourth special charge asked for by defendant is in harmony with this general rule, and that it was warranted by the facts of

the case.   Therefore we maintain that the court erred in refusing it.   *   *   *

*Reaves & Dodd,* for appellees, cited Redfield on Railways, pp. 255, 257; Paschal's Dig., arts. 4922, 4925; Const. of 1869, art. 1, sec. 14; B. B. B. & C. R. R. Co. v. Ferris, 26 Tex., 601; Shear. & Red. on Neg., sec. 84; City of Buffalo v. Holloway, 7 N. Y., 493; Storrs v. Utica, 17 N. Y., 104; Vermont Central R. R. Co. v. Baxter, 22 N. H., 372.

GOULD, ASSOCIATE JUSTICE.—This suit was instituted on behalf of the estate of Thomas Meador, deceased, to recover damages of the Houston and Great Northern Railroad Company for an alleged trespass in entering upon the premises of the intestate and constructing their road through his inclosed farm, tearing down the fence, and failing and refusing to build suitable stock-gaps, by reason whereof it was charged that stock entered the field and damaged the growing crop of small grain.

The defendant's special answer was, that the road was constructed not by its servants or agents, but by contractors employed under a written contract, who had exclusive control of the road and everything used in its construction, claiming that the alleged damages, if any, were occasioned by the negligence of said contractors and their servants, or by other persons than defendant or its servants.

The construction of the road through the land of Thomas Meador was commenced, as was shown on the trial, in September or October, 1873, and was completed by the contractors in April following, when it was turned over to the railroad company.   Sheppard & Henry contracted with defendant to build the road according to specifications.   "They were to furnish, and did furnish, the labor, materials, and implements necessary to do the work, including everything, except engines, cars, engineers, and firemen, having exclusive control during construction, subject only to the general supervision

of the work by the chief engineer of defendant and his assist-
ant." There was evidence that Thomas Meador, who was
then living, "refused to give the right of way through his
farm, and stated to the agent of the company that the com-
pany could go ahead with their road through his farm, but it
would have to pay him damages for it." The road passed
through one hundred and fifty acres, inclosed by a fence,
seventy or eighty acres of which were sowed in wheat and
other small grain. There was evidence that the fence, where
the road enters and leaves the field, was torn down for twenty
or thirty yards, put up again, and afterwards torn down again
and again put up; that no cattle-guards were constructed
until April, 1874, about the time the road was finished;
that Thomas Meador, for the protection of his grain crops,
erected, about Christmas, a gate where the road enters his
farm and one where it passes out of it; that stock got into
the farm, while the road was being constructed, at the places
where the fence was torn down, and damaged the growing
crop, there being evidence as to the amount of damage. It
appeared that after the road was completed, and after Thomas
Meador's death, his heirs and distributees instituted proceed-
ings under the statute, and recovered and received damages
for the right of way. There was evidence on the part of
defendant tending to establish that there was no negligence,
as to the fences, &c., on the part of the contractors, and that
the damage, if any, was the result of the acts and trespasses
of other persons.

The charge of the court allowed the plaintiff to recover
only for damages occasioned by the trespass of stock which
entered the farm "by reason of failure of defendant to have
proper cattle-guards or stops" placed where the road entered
and left the farm. In one part of the charge the court tells
the jury that the general rule is, that where a railroad is con-
structed by a contractor who has independent control of his
own employés, though the general design and result of the
work are subject to the supervision of the agent of the com-

pany, then, for any damage occasioned by the negligence or misconduct of such contractor or his employés, the railroad company is not liable. But the charge immediately proceeds: "If, however, the testimony in this case should show either that the defendants, their servants or employés, or that Sheppard & Henry, or other party with whom the defendants contracted to have their road constructed, by their servants or employés entered upon the alleged farm of the said Thomas Meador, as charged by the plaintiff, for the purpose of constructing said railroad, without first having obtained the consent of the said Thomas Meador, or without having first obtained the right of way thereover by the voluntary act of the owner of said farm, or without having first instituted proceedings to condemn said right of way under the provisions of the statute in such cases made and provided, then the defendants, if the evidence under the law of the charge would otherwise justify it, would be liable for damages to said alleged growing crop by reason of trespass of cattle, occasioned by the failure to place proper and sufficient cattle-guards or stops at the points where said railroad entered and left said farm."

The trial resulted in a verdict and judgment for plaintiff for $270.54, and the court refusing to grant a new trial, the railroad appeals. It is proposed to notice only those assignments of error which have been insisted on in the brief of counsel for appellant. The main question in the case is thus stated by counsel:

The fourth assignment of error by the defendant is substantially as follows: "The court erred in refusing to give the special charge asked by defendant, which reads as follows: 'If the evidence shows that the portion of defendant's road that was being constructed over the inclosure on which the small grain is alleged to have been growing was being constructed by contractors, and that it was exclusively under the control of such contractors for the purpose of construction, and the work was being done by the servants of the contract-

ors, and that if the fences around said inclosure were broken or removed the same was done by the servants or agents of such contractors, in that case the damages, if any, resulting from the acts or omissions of such servants or agents would be chargeable to such contractors, and not to the defendant in this case, in that the relation of master and servant does not exist in such a case between defendant and contractors; but that the contractors are independent, and have an independent control of the road, and are therefore alone responsible for injuries done by themselves or their servants.'"

The court, as we have seen, had substantially given this charge, but had qualified it by recognizing as an exception to the rule, that if the construction was attempted under such circumstances as to make an entry on the premises for that purpose a trespass, the defendant was liable notwithstanding the contract. Under the evidence, it was for the jury to say whether Meador had consented to the entry on his premises or not. If the principle stated by the court be the law, it was appropriate to the case, and the court did not err in refusing to give the charge asked without the qualification.

The principle is thus stated in an elementary work on Negligence: "Where a contractor is employed to do an unlawful act, * * * a person injured by such unlawful act, or by any result of it, may recover damages from either the contractor or the employer, or both. This, however, is a rule entirely distinct from any question of negligence, although the particular injury recovered for may be the consequence of the negligence of persons employed upon the work. No amount of care would exonerate the parties who authorized the wrongful act. Their liability arises from the fact that they instigated and received the benefit of a trespass." (Shear. & Red. on Neg., sec. 84; Pierce on Am. R. R. Law, p. 238; Creed v. Hartmann, 29 N. Y., 591; Congreve v. Smith, 18 N. Y., 79; Whart. on Agency, sec. 474, and authorities cited; Whart. on Neg., sec. 186.)

But if it were conceded, as claimed by appellant, that the

evidence established the assent of Thomas Meador to the construction of the road, reserving the right to compensation afterwards, the charge asked was properly refused, because the duty of placing cattle-guards or stops at the points of entering and leaving the inclosure devolved by statute on the railroad, and the existence of the contract is no excuse for the failure to perform it. The principle, that "if the injury complained of is the consequence of the neglect of a duty which was incumbent on the person for whose benefit the work was done, and not upon the contractor, the existence of the contract is no defense to the former," is said to be "obvious," and is believed to be well established. (Shear. & Red. on Neg., secs. 83, 84; Wood on Mast. and Serv., sec. 316, and references; Whart. on Neg., secs. 184, 185; Whart. on Agency, sec. 485.)

In its broadest or most general form, the proposition has been laid down, "that where a person is bound to perform an act as a duty, he intrusts its performance to another at his peril; and upon failure of such person to perform it, whether he stood in the relation of contractor or of servant, the person on whom the duty rests is liable for his neglect." (Wood on Mast. and Serv., sec. 316, p. 625, citing Pickard v. Smith, 4 L. T., (Eng.,) N. S., 470.)

For the purposes of this case a rule less general will suffice. Where the State, by virtue of the right of eminent domain, authorizes the appropriation of private property, such a right can only be exercised under the protection of the legislative grant, and under the conditions and liabilities which the statute attaches to the grant. (Pierce on Am. R. R. Law, 241; Lesher v. Wabash Nav. Co., 14 Ill., 85; Vermont Cent. R. R. Co. v. Baxter, 22 Vt., 372; Gardner v. Smith, 7 Mich., 410; City of Detroit v. Corey, 9 Mich., 191; Hilliard v. Richardson, 3 Gray, 353–364.)

Says a recent law writer, citing primarily a recent English case not accessible at this place: "Where certain privileges are granted by the Legislature, the body or individual is bound,

at his peril, to see that the privilege is exercised in strict conformity to the letter and spirit of the act conferring it, and liability attaches for all injurious consequences of a failure in that respect, although the injuries result from the act of a contractor intrusted with the execution of the work contemplated." (Wood on Mast. and Serv., sec. 316, citing Hole *v*. Sittingbourne R. R. Co., 6 H. & N., 488, and other cases.)

The statute reads: "Each and every railroad company whose railway passes through a field or inclosure is hereby required to place a good and sufficient cattle-guard or stop at the points of entering and leaving such field or inclosure, and keep them in good repair; and in case an inclosure or field through which a railway passes shall be enlarged," &c., proceeding to provide for that and other contingencies. (Paschal's Dig., art. 4925.) The statute, in terms, only requires the construction of cattle-guards; but it is evidently implied that the railroad is to be so constructed as to preserve the inclosure unimpaired. Cattle-guards are only needed where the trains pass through private fences on the track, and are a substitute for fences. If Meador had given the right of way and agreed on the compensation therefor, it would be implied, unless the contrary appeared, that all reasonable precautions were to be taken to prevent injury to the growing crop in the field through which the road was authorized to be built. And certainly where the right is only acquired through the exercise of the right of eminent domain, it is not more extensive than is reasonably acquired for the construction of the road. We cannot doubt that the duty of placing stock-guards, preserving or supplying the fences, so far, at least, as on the right of way, and protecting the inclosure from injury in the construction of the road, was a duty to the proprietor from the railroad, annexed by statute to the privilege granted the corporation, and that the failure to perform that duty is unexcused, though its non-performance may have resulted from the negligence of a contractor.

The charge asked embraced a general principle, which has been recognized by the Court of Appeals in a well-considered opinion, reviewing the authorities.   (Houston & G. N. R. R. Co. v. Van Bayless.)   The correctness of the conclusion reached in that case is not doubted.   While the road was being constructed by independent contractors, (the same road and contract as in this case,) a construction train ran over and killed a mule belonging to Van Bayless, and it was held that the railroad company was not liable.   There was no duty to Van Bayless devolving upon, and neglected by, the railroad, nor was any trespass on him or his rights incident to the proper performance of the contract.   The case turned upon the general question as to whether the contractor was the servant or agent of the railroad in running the construction train.

The principle, that a duty to the public or to an individual cannot be devolved on a contractor, has been enforced in numerous cases.   (Storrs v. City of Utica, 17 N. Y., 104; Water Co. v. Ware, 16 Wallace, 566; Milford v. Holbrook, 9 Allen, 19; Clark v. Fry, 8 Ohio St., 359; 12 Ill., 188; 49 Ill., 476.)

If no case has been produced where it has been applied in favor of a party through whose inclosure a railroad was constructed, it may also be said that no such case has been cited in which the question was made and considered.

The court did not err in refusing the charge asked.   The only other assignment of error urged, viz., that the verdict of the jury is contrary to the law and the evidence, seems to be based on the proposition already passed upon.   If the evidence that the failure to place cattle-guards caused the trespass of stock, was somewhat unsatisfactory, we cannot say that it was insufficient to support the verdict.   Especially would we hesitate to reverse the case on such grounds, when our views of the duty and liability of the railroad are such as are here expressed.

We have not considered errors assigned by appellees, as

they disclaim any desire for a reversal. The judgment is affirmed.

JUDGMENT AFFIRMED.

[Justice BONNER did not sit in this case.]