# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-0905
═══════════

ENVIRONMENTAL PROCESSING SYSTEMS, L.C., PETITIONER,

v.

FPL FARMING LTD., RESPONDENT

═══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE NINTH DISTRICT OF TEXAS
═══════════════════════════════════════════════

**Argued January 7, 2014**

JUSTICE GREEN delivered the opinion of the Court.

In this case, a landowner sued its neighbor, the operator of an adjacent wastewater disposal facility, on the theory that deep subsurface wastewater trespassed beneath the landowner's property. The jury returned a verdict in the wastewater disposal facility's favor. After a series of appeals that included an opinion and remand from this Court, the court of appeals reversed the jury's verdict. 383 S.W.3d 274, 289 (Tex. App.—Beaumont 2012). Today we hold that the jury instruction properly included lack of consent as an element of a trespass cause of action that a plaintiff must prove, and that the trial court properly denied the plaintiff's motion for directed verdict on the issue of consent. We reverse the court of appeals' judgment, reinstate the trial court's judgment that the landowner take nothing, and decline the invitation to address the remaining question presented in

this appeal—namely, whether deep subsurface wastewater migration is actionable as a common law trespass in Texas.

## I. Factual and Procedural Background

FPL Farming Ltd. owns land in Liberty County, Texas, which it uses primarily for rice farming. It owns all of the surface and non-mineral subsurface rights to this land. Environmental Processing Systems (EPS) leased a five-acre tract on an adjacent property, where it constructed and operated a wastewater disposal facility. EPS began operating this facility under a 1996 permit from the Texas Natural Resource Conservation Commission (TNRCC).[1] During the initial permitting process, FPL Farming's predecessor-in-title, J.M. Frost III, requested a hearing to contest EPS's permit applications. Frost later reached a settlement with EPS, forgoing his contest in exchange for $185,000. The parties reduced their agreement to a writing reflecting that the settlement was binding on all successors-in-title. EPS then drilled a well and began injecting wastewater approximately 8,000 feet below ground into the Frio rock formation.

In 1999, EPS applied to the TNRCC/TCEQ to amend its permits to increase the volume of wastewater it could inject into the Frio formation. FPL Farming, by then the surface owner of the Frost property, requested a hearing to contest the permit amendments. The administrative law judge acknowledged that wastewater would likely enter the subsurface of FPL Farming's land in the future, but found that FPL Farming did not have the right to exclude EPS from the deep subsurface because

---

[1] EPS requested and received two permits to operate two Class I wastewater injection wells. It is undisputed, however, that during the relevant time in this case EPS only drilled and injected wastewater through one well. Years after it issued EPS's permits, the TNRCC was renamed the Texas Commission on Environmental Quality (TCEQ). *See* Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1933, 1985. We refer to this entity as the TNRCC/TCEQ for clarity purposes.

FPL Farming's right to obtain its own injection well permit would not be impaired. The TNRCC/TCEQ granted EPS's permit amendments upon the recommendation of the administrative law judge, and the district court affirmed. The court of appeals also affirmed, noting the possibility that "should the waste plume migrate to the subsurface of FPL Farming's property and cause harm, FPL Farming may seek damages from EPS." *FPL Farming, Ltd. v. Tex. Natural Res. Conservation Comm'n*, No. 03-02-00477-CV, 2003 WL 247183, at *5 (Tex. App.—Austin Feb. 6, 2003, pet. denied) (mem. op.) (citation omitted).

Less than three years after the court of appeals affirmed the permit amendments, FPL Farming sued EPS and alleged that wastewater had migrated into the deep subsurface of its land, possibly contaminating the briny groundwater beneath it. FPL Farming sued for injunctive relief and damages for trespass, negligence, and unjust enrichment. At trial, the contested issues were whether EPS's injected wastewater had actually entered beneath FPL Farming's land, whether FPL Farming consented to the alleged entry (either by its own conduct or through Frost's), and the amount of damages, if any. The trial court excluded the settlement agreement between Frost and EPS. Before the jury verdict, the trial court denied FPL Farming's no-evidence motion for a directed verdict on the issue of whether EPS provided evidence that FPL Farming or Frost had consented to the subsurface entry. The jury charge included consent in the definition of trespass over FPL Farming's objection that consent should be treated as an affirmative defense:

Question 1: Did EPS trespass on FPL [Farming's] property?

> "Trespass" means an entry on the property of another *without having consent of the owner*. To constitute a trespass, entry upon another's property need not be in person, but may be made by causing or permitting a thing to cross the

3

boundary of the property below the surface of the earth. Every *unauthorized* entry upon the property of another is a trespass, and the intent or motive prompting the trespass is immaterial.

Answer yes or no.

(emphasis added). The jury answered "No."

Following a jury verdict for EPS on all claims and issues, the trial court entered a take-nothing judgment. The court of appeals affirmed, holding that FPL Farming could not recover in tort, as a matter of law, because the TNRCC/TCEQ had authorized EPS's underlying actions. *FPL Farming Ltd. v. Envtl. Processing Sys., L.C.*, 305 S.W.3d 739, 744–45 (Tex. App.—Beaumont 2009), *rev'd*, 351 S.W.3d 306 (Tex. 2011), *remanded to* 383 S.W.3d 274 (Tex. App.—Beaumont 2012, pet. granted). This Court reversed, holding that a government-issued permit does not shield the permit holder from civil tort liability, but we reserved the question of whether "subsurface wastewater migration can constitute a trespass, or whether it did so in this case." *FPL Farming Ltd.*, 351 S.W.3d at 314–15. On remand, the court of appeals reversed the trial court's take-nothing judgment, holding that: (1) Texas recognizes a common law trespass cause of action for deep subsurface water migration; (2) consent is an affirmative defense to trespass, on which EPS bore the burden of proof, and therefore the jury charge was improper; (3) FPL Farming was not entitled to a directed verdict because there was some evidence that it (or Frost) impliedly consented to the subsurface entry; and (4) the trial court erroneously excluded the settlement agreement between EPS and Frost from evidence. 383 S.W.3d at 282, 284–85, 288–89.

Both parties petitioned this Court for review. EPS challenges the court of appeals' decision recognizing a trespass cause of action under these circumstances and holding that consent is an

4

affirmative defense. FPL Farming challenges the court of appeals' decision affirming the denial of its motion for directed verdict and reversing the settlement agreement's exclusion. We granted both petitions for review. 57 TEX. SUP. CT. J. 53 (Nov. 22, 2013).

## II. Consent in Trespass Causes of Action

We first consider whether lack of consent is an element of the trespass cause of action (on which the plaintiff bears the burden) or whether consent is an affirmative defense (on which the defendant bears the burden). If lack of consent is an element of a trespass cause of action as the jury charge instructed here, then we need not address whether Texas law recognizes a trespass cause of action for deep subsurface wastewater migration because the jury found in EPS's favor on all of FPL Farming's claims and any error would be harmless. *See* TEX. R. APP. P. 61.1(a); *see also Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, ___ S.W.3d ___, ___ (Tex. 2014) (declining to address a question related to a trespass allegation because "even if the submission of the trespass cause of action was error, it was harmless").

We have not squarely addressed the question of which party bears the burden of proving consent in a trespass action, nor have the courts of appeals answered it uniformly.[2] We recently observed that "we have rarely addressed trespass damages in detail," *Coinmach Corp. v. Aspenwood*

---

[2] *Compare Stukes v. Bachmeyer*, 249 S.W.3d 461, 465 n.1 (Tex. App.—Eastland 2007, no pet.) (referencing consent as an affirmative defense without analyzing the question directly), *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 835 (Tex. App.—Dallas 2000, no pet.) (same), *Cain v. Rust Indus. Cleaning Servs., Inc.*, 969 S.W.2d 464, 470 (Tex. App.—Texarkana 1998, pet. denied) (same), *Ward v. Ne. Tex. Farmers Co-op. Elevator*, 909 S.W.2d 143, 150 (Tex. App.—Texarkana 1995, writ denied) (same), *Carr v. Mobile Video Tapes, Inc.*, 893 S.W.2d 613, 623 (Tex. App.—Corpus Christi 1994, no writ) (same), *and Stone Res., Inc. v. Barnett*, 661 S.W.2d 148, 151 (Tex. App.—Houston [1st Dist.] 1983, no writ) (performing some analysis on the consent question and holding that consent is an affirmative defense), *with Watson v. Brazos Elec. Power Coop., Inc.*, 918 S.W.2d 639, 645–46 (Tex. App.—Waco 1996, writ denied) (approving a jury charge that defined trespass as entering another's property without consent).

*Apartment Corp.*, 417 S.W.3d 909, 920 (Tex. 2013), so it is unsurprising that we have also not addressed which party bears the burden to prove consent in a trespass lawsuit.[3]  Although important trespass issues have not frequently drawn this Court's attention, our historical precedent guides the present inquiry.

Examining our historical treatment of trespass is important because we adhere to prior decisions that have established rules relating to property rights unless, or until, the Legislature modifies those rules.  *See Friendswood Dev. Co. v. Smith-Sw. Indus., Inc.*, 576 S.W.2d 21, 29 (Tex. 1978) (stating that "[t]he doctrine of *stare decisis* has been and should be strictly followed by this Court in cases involving established rules of property rights," but giving effect to subsequent changes in legislative policy); *see also Southland Royalty Co. v. Humble Oil & Ref. Co.*, 249 S.W.2d 914, 916 (Tex. 1952) (stating that when this Court reviews property rights, previously established rules "should not be changed in the absence of other controlling circumstances, even though good reasons might be given for a different holding") (quoting *Tanton v. State Nat'l Bank of El Paso*, 79 S.W.2d 833, 834 (Tex. 1935)); *cf. Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 702 (Tex. 2002) (acknowledging "[t]he emphasis our law places upon . . . important public policies by promoting certainty in land transactions").  A review of this Court's trespass-related jurisprudence reveals that

---

[3] In a recent case involving a civil battery claim, however, we recognized that "[c]onsent to contact 'negatives the wrongful element of the defendant's act, and prevents the existence of a tort.'"  *City of Watauga v. Gordon*, 434 S.W.3d 586, 591 (Tex. 2014) (quoting W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS, § 18, at 112 (5th ed.1984)).  We concluded that the plaintiff pleaded the existence of an intentional tort because his pleadings demonstrated he did not consent to the defendant's conduct, and "battery is defined to require an intentional touching without consent."  *Id.* at 594 (citation omitted).

a common definition of trespass has emerged over time that is consistent with the trespass definition submitted to the jury in this case.

This Court has consistently defined a trespass as encompassing three elements: (1) entry (2) onto the property of another (3) without the property owner's consent or authorization. Our review of this Court's trespass cases begins with our first recorded opinions.[4] In 1841, the Supreme Court of the Republic of Texas reviewed a case in which:

> A jury found that the defendant entered on the premises of the plaintiff without any title in law or warrant of authority from the plaintiff; that the plaintiff, with a view to be restored to possession, gave up one portion of his land to get possession of the other portion, and that the title of the plaintiff was genuine.

*Hall v. Phelps*, Dallam 435, 436 (Tex. 1841). The Court noted that the trial court refused the defendant's proposed instructions, which sought to depict the parties' transaction as consensual and not coerced. *Id.* at 436–37 (noting, for example, one proposed instruction: "If [the jury] believed the parties compromised their difficulties and settled the same, they should find for the defendant."). Instead, the Court approved the trial court's instructions, *id.* at 439–40, 441, which the Court summarized as stating:

> [If the jury] believed the defendant entered on the premises *without any title in law or warrant of authority from the plaintiff*, and that [the plaintiff], with a view to be restored to possession, gave up one portion of his land to get back the other, they might declare the title so made as void; that they should determine from the evidence, if this had been such a case; that if they believed the defendant had a doubtful claim to the league granted to plaintiff, they might find for the defendant; but to come to that conclusion they should be satisfied the defendant had more than a shadow of

---

[4] We recognize that this historical examination involves cases decided before formal pleading rules went into effect. We cite them not as conclusive authority on their allocation of the burden of proof, but as examples of how this Court has defined trespass or approved the definition of trespass over time.

7

> title; and that if they believed the defendant's entry on the land was *without any right* to enter, they might find such damages as the evidence warranted.

*Id.* at 437 (emphasis added). After the plaintiff proved that "the defendant's entry on the land was without any right to enter," the trial court ruled in the plaintiff's favor and issued an injunction prohibiting the defendant from entering the plaintiff's land.[5] *Id.* The Court affirmed the trial court's judgment in all respects. *Id.* at 441.

In 1878, the now-Supreme Court of Texas had an opportunity to review jury instructions that involved trespass issues. In *Houston & Great Northern Railroad Co. v. Meador*, 50 Tex. 77 (1878), a landowner's heirs sued a railroad company and alleged it negligently constructed a railroad through the landowner's property by damaging fences and failing to install cattle guards, which caused livestock to enter the property and damage crops. *Id.* at 81. The railroad requested a jury instruction on the defense that because it used independent contractors to construct the railroad, the contractors were solely liable for any damages caused by their own negligence. *Id.* at 81, 83–84. The trial court denied the railroad's proposed instruction based on an exception to independent contractor liability rules that an employer can still be held liable if it authorized an independent contractor to commit a wrongful act. *Id.* at 82–84. Apart from the question of negligence, the case turned on whether the railroad caused the independent contractors to wrongfully trespass on the landowner's property because causing such a wrongful act would have made the railroad responsible for the independent

---

[5] We specifically note this portion of the relief granted—an injunction against future entry— because it is wholly consistent with the relief available in a common law trespass action. *See, e.g.*, *Allen v. Keeling*, 613 S.W.2d 253, 255 (Tex. 1981) (enjoining defendants from trespassing).

8

contractor's negligence. *Id.* at 84. The Court approved of the trial court's instruction that defined trespass:

> If, [the evidence] should show either that the defendants [or the independent contractors] entered upon the [landowner's property] for the purpose of constructing said railroad, *without first having obtained the consent of the [landowner]*, . . . then the defendants, if the evidence under the law of the charge would otherwise justify it, would be liable for damages to [the landowner's crops based on the negligent construction of the railroad].

*Id.* at 83 (emphasis added). In approving this instruction, the Court noted that "[u]nder the evidence, it was for the jury to say whether [the landowner] had consented to the entry on his premises or not." *Id.* at 84.

In a trespass to try title case in 1881, this Court defined a trespasser as "one who, not having the title to land, *without the consent* of the true owner, makes entry thereon." *Pilcher v. Kirk*, 55 Tex. 208, 216 (1881) (emphasis added). Similarly, in 1884, this Court recognized that "[t]he ordinary signification of the term 'trespass' is the wrongful interference with another's personal or property rights." *Cahn Bros. & Co. v. Bonnett*, 62 Tex. 674, 676 (1884). In determining the appropriate venue for a plaintiff to bring suit for a wrongful writ of attachment, the Court explained that "the pith of the action is the wrongful interference thereby with the property rights of the plaintiff." *Id.*

In 1889, in a case involving questions of trespass and the lawful recovery of personal property, a married couple alleged that a group of defendants entered their home, removed rented furniture, and threatened the wife. *Loftus v. Maxey*, 11 S.W. 272, 272 (Tex. 1889). The parties contested the issue of whether the couple consented to the defendants' entry, and this Court approved

9

of a jury instruction that read: "If the proof satisfy you that the defendants . . . did take and remove the bed, as alleged in the plaintiffs' petition, *without the consent* of [the plaintiffs], . . . then you will find for plaintiffs for such an amount as you may deem proper and adequate . . . ." *Id.* (emphasis added).

Later, in 1926, this Court noted that construction and maintenance of a dam on another's property for thirty-five years would constitute a continuing trespass if it occurred without the landowner's consent. *See Motl v. Boyd*, 286 S.W. 458, 476 (Tex. 1926), *disapproved of on other grounds by Valmont Plantations v. State*, 355 S.W.2d 502 (Tex. 1962). Ten years later, in a premises liability case, this Court defined a trespasser, in part, as someone who "enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license." *Tex.–La. Power Co. v. Webster*, 91 S.W.2d 302, 306 (Tex. 1936) (citation omitted). Later still, in *Shell Oil Co. v. Howth*, 159 S.W.2d 483 (Tex. 1942), a case involving adverse claims to mineral land, this Court distinguished another case by explaining that "[t]he entry of the [defendant] on the land *without the consent* of [the landowner] constituted a trespass and ouster in denial of [the landowner's] rights. That was the gravamen of the wrong, and a recovery was based upon that ground." *Id.* at 491 (emphasis added) (citing *Humble Oil & Ref. Co. v. Kishi*, 276 S.W. 190, 190–91 (Tex. Comm'n App. 1925, judgm't adopted), *judgm't set aside on reh'g*, 291 S.W. 538 (Tex. Comm'n App. 1927, holding approved)).

In recent years, this Court's definition of a common law trespasser has remained consistent with our historical precedent. In 1997, we cited a writ refused, court of appeals case for its holding that "every *unauthorized* entry upon land of another is a trespass." *Trinity Universal Ins. Co. v.*

10

*Cowan*, 945 S.W.2d 819, 827 (Tex. 1997) (emphasis added) (quoting *McDaniel Bros. v. Wilson*, 70

S.W.2d 618, 621 (Tex. Civ. App.—Beaumont 1934, writ ref'd)).  In a 2006 premises liability case,

we stated that "[a] trespasser at common law was one who entered upon property of another *without*

*any legal right or invitation*, express or implied."  *State v. Shumake*, 199 S.W.3d 279, 285 (Tex.

2006) (emphasis added) (citing *Tex.–La. Power Co.*, 91 S.W.2d at 306).  Two years later, in a case

involving a trespass allegation, we once again approvingly quoted the rule from *McDaniel Brothers*

that "every *unauthorized* entry upon land of another is a trespass even if no damage is done or injury

is slight, and gives a cause of action to the injured party."  *Coastal Oil & Gas Corp. v. Garza Energy*

*Trust*, 268 S.W.3d 1, 12 n.36 (Tex. 2008) (emphasis added) (quoting *McDaniel Bros.*, 70 S.W.2d

at 621).

Further, we reiterated the now-familiar standard in a 2011 trespass case, stating that

"[t]respass to real property is an *unauthorized* entry upon the land of another, and may occur when

one enters—or causes something to enter—another's property."  *Barnes v. Mathis*, 353 S.W.3d 760,

764 (Tex. 2011) (per curiam) (emphasis added) (citations omitted).  In *Barnes*, the burden of proving

consent was not challenged, but the jury instruction defined trespass, in relevant part, as "any

unauthorized intrusion or invasion of private premises or land of another, committed when a person

enters another's land without consent; or alternatively, unauthorized entry upon land of another."

*Id.* at 765 n.4.  Finally, in 2013, this Court approved of a court of appeals' definition of trespass

when we noted, "Texas courts of appeals have provided helpful explanations of the common law

principles that apply [in trespass cases]," and we recited the general definition that "[e]very

11

*unauthorized* entry upon land is a trespass even if no damage is done." *Coinmach Corp.*, 417 S.W.3d at 920 (emphasis added) (quoting *Watson*, 918 S.W.2d at 645).

In sum, the definition of a common law trespass has remained constant throughout this Court's jurisprudence and has become a well-established rule relating to property rights. At its core, a "[t]respass to real property is an *unauthorized* entry upon the land of another, and may occur when one enters—or causes something to enter—another's property." *Barnes*, 353 S.W.3d at 764 (emphasis added) (citations omitted). We have never departed from the inclusion of lack of consent or authorization in the definition of a trespass. With this well-established definition of a trespass in mind, we next address whether the jury charge properly placed the burden of proving an unauthorized entry, or lack of consent, on the plaintiff.

FPL Farming argues that section 167 of the Restatement (Second) of Torts clearly establishes that consent is an affirmative defense to a trespass claim. *See* RESTATEMENT (SECOND) OF TORTS § 167 cmt. c (1965). Comment c to section 167, the provision defining the trespass cause of action, states: "*Burden of proof.* The burden of establishing the possessor's consent is upon the person who relies upon it." *Id.* Despite FPL Farming's contrary contention, it is not clear from this language which party is "the person who relies upon [consent]," and the only case in Texas that has cited this comment is the court of appeals' opinion below.[6] *See* 383 S.W.3d at 283–84.

---

[6] Colorado cites this comment in its pattern jury charge, which treats consent as an affirmative defense in a trespass cause of action. COLO. SUP. CT. COMM. ON CIVIL JURY INSTRUCTIONS 18:3. It is the only state that cites comment c in providing how consent is incorporated into a trespass causes of action.

A handful of courts of appeals have stated that consent is an affirmative defense to be pleaded and proven by the defendant, but the issue is far from settled.[7] There is no pattern jury charge for a trespass to real property cause of action in Texas. At least one court of appeals has approved of a proposed charge definition and question that included lack of consent as an element of trespass. *See Watson*, 918 S.W.2d at 645–46.[8] And although other courts of appeals have stated that "consent is an affirmative defense to a cause of action for trespass," *e.g.*, *Gen. Mills Rests., Inc.*, 12 S.W.3d at 835, the more precise statement from the courts of appeals' case law is that "consent to enter the property is sufficient to defeat the cause of action for trespass," *e.g.*, *Carr*, 893 S.W.2d at 623, because only one court of appeals has given more than cursory treatment to the present issue of whether consent is an affirmative defense to a trespass claim. *See Stone Res., Inc.*, 661 S.W.2d at 151. There, the court of appeals held, without citing any authority for the proposition, that:

> [R]egardless of the definition given to the term "trespass", the courts have held that once the plaintiff has proven ownership of the property "or a lawful right to possession", and an entry by the defendant, the burden of proof falls upon the defendant to plead and prove consent or license as a justification for the entry.

---

[7] *See supra* note 2 (listing cases).

[8] The tendered definition and question on trespass were:

"Trespasser" means one who enters on the property of another without having consent of the owner. To constitute a trespass, entry upon another's property need not be in person but may be made by causing or permitting a thing to cross the boundary of the premises. Every unauthorized entry upon land of another is a trespass and the intent or motive prompting the trespass is immaterial.

Did [Brazos] trespass causing damage to [Watson's] property on the date of the fire that is the basis of this suit?

*Watson*, 918 S.W.2d at 645–46. The court of appeals held that the trial court erred by refusing this tendered definition and question, and by failing to include them in the charge. *See id.* at 641–42.

13

*Id.* Subsequent courts of appeals' opinions have merely cited *Stone Resources* for this rule of law in dicta, and perhaps hastily used the term "affirmative defense" to describe the proposition.[9] Thus, no well-reasoned allocation of the burden of proving consent in trespass cases has emerged from our courts of appeals,[10] despite FPL Farming's arguments to the contrary.

Ignoring the well-established definition of a trespass as "an unauthorized entry upon the land of another," *see, e.g.*, *Barnes*, 353 S.W.3d at 764, FPL Farming argues that the defendant bears the burden of proving authorization, or consent, as an affirmative defense. In determining the burden allocation of a fact a party must prove, we consider: (1) "[t]he comparative likelihood that a certain

---

[9] *See Stukes*, 249 S.W.3d at 465–66 & n.1; *Gen. Mills Rests., Inc.*, 12 S.W.3d at 831–32, 835; *Cain*, 969 S.W.2d at 470; *Ward*, 909 S.W.2d at 150; *Carr*, 893 S.W.2d at 623–24.

[10] Our review of other jurisdictions reveals a similar lack of reasoning and consistency in allocating the burden of pleading and proving consent. *Compare Loftus v. Mingo*, 511 N.E.2d 203, 210 (Ill. App. Ct. 1987) (requiring plaintiff's pleadings to negate performance of official duties and allege wrongful interference with property rights to claim trespass against a public official), *Sullivan v. Wallace*, 766 So. 2d 654, 658 (La. Ct. App. 2000) (concluding that a defendant "enter[ing] onto the land and remov[ing] timber without the plaintiff's knowledge or consent" was sufficient to support a finding of trespass), *Mitchell v. Balt. Sun Co.*, 883 A.2d 1008, 1014 (Md. Ct. Spec. App. 2005) (recognizing that a trespass plaintiff must prove lack of consent), *and Ondovchik Family Ltd. P'ship v. Agency of Transp.*, 996 A.2d 1179, 1183, 1187 (Vt. 2010) (holding that a landowner failed to plead a trespass claim because, "[b]y definition, trespass involves conduct that the trespasser has *no right* to engage in" and defendant's actions were privileged) (citations omitted), *with McCaig v. Talladega Publ'g Co.*, 544 So. 2d 875, 879 (Ala. 1989) ("Consent is a defense to an action for damages for trespass."), *Rosenthal v. City of Crystal Lake*, 525 N.E.2d 1176, 1181 (Ill. App. Ct. 1988) (finding that plaintiff in a trespass and ejectment action did not have the burden to prove defendant's initial entry was unlawful), *and Grygiel v. Monches Fish & Game Club, Inc.*, 787 N.W.2d 6, 18 (Wis. 2010) (concluding that a trespass defendant must plead and prove lack of consent). Further, some jurisdictions appear to allocate the burden of proving and disproving consent on plaintiffs and defendants simultaneously. *See Lee v. Konrad*, 337 P.3d 510, 522 (Alaska 2014) (citations omitted) (inconsistently stating that "[c]onsent is generally considered to be an affirmative defense to trespass," but "consent marks a deficiency in the plaintiff's prima facie case at the most fundamental level; where the plaintiff consents, the defendant's act is simply not tortious"); *Singleton v. Haywood Elec. Membership Corp.*, 588 S.E.2d 871, 874 (N.C. 2003) (citations omitted) (referring to trespass as a "wrongful invasion" and stating that "a claim of trespass requires . . . an unauthorized entry by [a] defendant," but inconsistently stating that "[i]n a trespass action a defendant may assert that the entry was lawful or under legal right as an affirmative defense"). But requiring a defendant to carry the burden of proof on an element that is also fundamental to the plaintiff's prima facie case "obviates the tort: Where there is a consensual entry, there is no tort, because lack of consent is an element of the wrong." *Spinks v. Equity Residential Briarwood Apartments*, 90 Cal. Rptr. 3d 453, 484 (Ct. App. 2009) (citation omitted).

14

situation may occur in a reasonable percentage of cases"; and (2) the difficulty in proving a negative. *20801, Inc. v. Parker*, 249 S.W.3d 392, 397 (Tex. 2008) (citations omitted).

Applying the *20801, Inc.* factors, we are mindful that consent is an issue in only a fraction of trespass cases, as represented by the dearth of case law on point. The fact that consent (or authorization) is rarely contested reflects "the assumption that landowners normally have no reason to expect trespassers or know about them," *Shumake*, 199 S.W.3d at 285, and landowners or possessors will normally not be presented with the opportunity to provide consent or authorization before an entry occurs.

Regarding the second *20801, Inc.* factor, we do not believe it will be difficult for a landowner or possessory interest holder to prove lack of consent or authorization. After all, the landowner or possessor who is bringing suit is in the best position to provide evidence on whether an alleged trespasser's presence was unauthorized because only "someone acting with the authority of the landowner or one with rightful possession" can authorize, or consent to, the entry. *Gen. Mills Rests. Inc.*, 12 S.W.3d at 835; *see also Armintor v. Cmty. Hosp. of Brazosport*, 659 S.W.2d 86, 90 (Tex. App.—Houston [14th Dist.] 1983, no writ); *cf. Tex.–La. Power Co.*, 91 S.W.2d at 306 (indicating that only "the owner or person in charge" can authorize entry onto the property). Given these parameters, it makes sense to treat consent, or lack thereof, as an element of the trespass cause of action rather than as an affirmative defense. Otherwise, a trespass cause of action would require plaintiffs to prove only an entry onto their property, which ignores our well-established definition that the entry is actionable only if it is unauthorized or without consent.

15

Relatedly, we recognize the fundamental notion that "[g]enerally, an owner of realty has the right to exclude all others from use of the property." *Severance v. Patterson*, 370 S.W.3d 705, 709 (Tex. 2012); *see also Marcus Cable Assocs., L.P.*, 90 S.W.3d at 700. Of course, this right to exclude may be relinquished, s*ee, e.g.*, *Marcus Cable Assocs., L.P.*, 90 S.W.3d at 700 (granting an easement is a relinquishment of the right to exclude), and therefore, mere entry onto the property of another may not always be actionable as a trespass. Further, we have stated that "[t]he misfeasance or the *wrongful act* is the trespass." *Lyle v. Waddle*, 188 S.W.2d 770, 773 (Tex. 1945) (emphasis added). This aligns with our well-established definition that trespass is "an *unauthorized* entry upon the land of another." *See, e.g.*, *Barnes*, 353 S.W.3d at 764 (emphasis added). It follows that an entry onto the land of another is wrongful, and therefore actionable, if it is without consent or authorization. *Cf. City of Watauga*, 434 S.W.3d at 591 (recognizing that consent prevents a defendant's conduct from being wrongful). Thus, to maintain an action for trespass, it is the plaintiff's burden to prove that the entry was wrongful, and the plaintiff must do so by establishing that entry was unauthorized or without its consent.

In conclusion, we hold that the jury charge here provided the well-established definition of a trespass, which includes lack of consent or authorization as an element of the cause of action. Because the charge provided the correct definition and resulted in a jury verdict and judgment in favor of EPS, any error in submitting the trespass question about a possible deep subsurface water migration was harmless. *See* TEX. R. APP. P. 61.1(a); *see also Gilbert Wheeler, Inc.*, ___ S.W.3d at ___ (declining to address a question related to a trespass allegation because "even if the submission of the trespass cause of action was error, it was harmless"). Therefore, without the need

16

to decide whether Texas law recognizes a trespass cause of action for deep subsurface water migration, we next address whether the trial court properly denied FPL Farming's motion for directed verdict.

### III. Directed Verdict

FPL Farming moved for a directed verdict on the basis that EPS provided no evidence to support any of the affirmative defenses it pleaded, which included consent and authorization.[11] The trial court denied the motion on all grounds. Later, the trial court overruled FPL Farming's objection that the issue of consent was improperly included in the jury charge's definition of trespass and should have been an affirmative defense that EPS had to prove as the defendant.

As discussed above, we agree with the trial court that consent is not an affirmative defense to a trespass action, but rather lack of consent or authorization is an element of a trespass cause of action that a plaintiff must prove. Accordingly, FPL Farming's motion for directed verdict relied on an erroneous premise because EPS was not obligated to prove that FPL Farming consented to the alleged entry. *Cf. Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983) (stating that no-evidence challenges "are appropriate when the party without the burden of proof complains of a . . . finding"). Instead of moving for a directed verdict that EPS provided no evidence of consent, FPL Farming's motion should have sought relief on the ground that it established as a matter of law an element of its cause of action on which it bore the burden of proof—lack of consent or authorization. *See id.* (citing *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 113 (Tex. 1976)) ("When . . . the party having

---

[11] Although EPS included consent and authorization in the many affirmative defenses it pleaded, we note that FPL Farming also pleaded lack of consent as an element of its trespass claim.

the burden of proof appeals from an adverse fact finding in the trial court, the point of error should be that the matter was established as a matter of law . . . ."); *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

Despite FPL Farming's reliance on the wrong burden in its motion for directed verdict, we will consider its contentions because "[i]t is our practice to liberally construe the points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants." *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982); *see also O'Neil*, 542 S.W.2d at 114. Thus, liberally construing FPL Farming's contentions, FPL Farming would have been entitled to a directed verdict if it conclusively established, as a matter of law, that it did not authorize or consent to EPS's alleged entry. *See Dow Chem. Co.*, 46 S.W.3d at 241 (citing *Croucher*, 660 S.W.2d at 58). At the time of its motion, FPL Farming did not argue or cite to *any* evidence upon which the trial court could have found as a matter of law that FPL Farming did not consent to EPS's alleged entry. *See* TEX. R. CIV. P. 268 ("A motion for directed verdict shall state the specific grounds therefor."). Accordingly, the trial court properly denied the motion for directed verdict and submitted the issue of lack of consent to the jury. *See Dow Chem. Co.*, 46 S.W.3d at 241 (noting that a matter of law challenge can be sustained only if it is conclusively established); *see also Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978) (stating that a directed verdict is proper when the evidence leads to only one conclusion).

FPL Farming's challenge to the trial court's denial of its motion for directed verdict fails even when we liberally construe its contentions. We agree with the court of appeals' holding that FPL Farming was not entitled to a directed verdict on the issue of consent, albeit for different reasons than the court of appeals stated.

18

## IV. Remaining Issues

EPS challenged the trial court's exclusion of the 1996 settlement agreement between FPL Farming's predecessor-in-title and EPS at the time of the initial permit applications, and the court of appeals held that the trial court erroneously excluded it from evidence. We need not address the admissibility of the settlement agreement, however, because the jury found in EPS's favor. Thus, even if the trial court erroneously excluded the settlement agreement, any error was harmless. *See* TEX. R. APP. P. 61.1(a). Because we are rendering judgment in favor of EPS and not remanding the case for a new trial, the admissibility of the settlement agreement is an unnecessary inquiry.

Similarly, because it prevailed at trial, EPS was not harmed by the submission of a jury question asking whether it committed a trespass by causing deep subsurface wastewater to migrate underneath FPL Farming's property. This lack of harm eliminates the need to address whether Texas law recognizes a trespass cause of action for deep subsurface wastewater migration.

Accordingly, we neither approve nor disapprove of the court of appeals' analysis and holding on these remaining issues.

## V. Conclusion

Lack of consent is a required element of a trespass cause of action that the plaintiff must prove, and the jury charge here correctly reflected the longstanding definition of trespass in Texas. Additionally, FPL Farming failed to conclusively establish that it did not consent to EPS's alleged entry in connection with its motion for directed verdict, so the trial court did not err in denying the motion and submitting the issue to the jury. There was no harmful error in excluding the settlement agreement because the jury found for EPS without considering it. Finally, any error in submitting

the question of trespass for deep subsurface wastewater migration was harmless because the jury found no such liability, which obviates the need to address whether this is a viable cause of action in Texas.  Accordingly, we reverse the court of appeals' judgment and reinstate the trial court's judgment that FPL Farming take nothing.

_____
Paul W. Green
Justice

OPINION DELIVERED: February 6, 2015