

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-25-00062-CV

Dean **DAVENPORT**, Individually and as Trustee of the CRD 2017 Trust, Jana Davenport, The JasperRuth Ranch, LLC, JRRanch A Unit, LLC, and JRRanch B Unit, LLC,
Appellants

v.

### EOG RESOURCES, INC.,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2023-CVG-000491-D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:  Velia J. Meza, Justice

Sitting:     Lori Massey Brissette, Justice
             Adrian A. Spears II, Justice
             Velia J. Meza, Justice

Delivered and Filed: June 24, 2026

AFFIRMED

Appellants, Dean Davenport and various related entities,[1] appeal from a judgment awarding $14,954,784 in damages to EOG Resources, Inc. for breach of contract. The Davenports contend the trial court erred in granting summary judgment and directed verdict motions, challenge

---

[1] Collectively referred to as the "Davenports."

the sufficiency of the evidence, and assert that the trial court abused its discretion by denying their mid-trial request to amend their pleadings. We affirm.

## BACKGROUND

In 1967, the parties' predecessors in interest entered into an oil, gas and mineral lease colloquially referred to as the Garner Lease. This lease grants the lessee broad surface use rights. Of particular relevance to this suit, the lease contains a provision restricting lessee from free use of "water from [l]essor's wells."

In January of 2020, the Davenports began purchasing various tracts of land burdened by the Garner Lease. At that time, the mineral lessee, EOG, was not actively drilling on the tracts of land purchased by the Davenports. However, in October or November of 2021, Dean Davenport became aware that EOG was planning to resume drilling under the Garner Lease. Shortly thereafter, the Davenports were approached by EOG with an offer to purchase water from their wells. The Davenports accepted and on January 31, 2022, the parties entered into a non-exclusive take or pay water purchase agreement ("WPA").

On March 24, 2023, EOG informed the Davenports of their plan to construct a new access gate (the "Rancho Derecho gate") and road through their property due to the inaccessibility and disrepair of the existing entry point along Krueger Road. The Davenports objected to EOG's plan and suggested alternative routes. Despite the Davenports' objection, EOG proceeded to construct the Rancho Derecho gate and a caliche road over the Davenports' ranch, prompting this litigation.

The parties moved for summary judgment on competing declaratory judgment claims, each seeking an interpretation of the terms of the WPA. The Davenports sought to declare that the WPA restricted all of EOG's ingress and egress to the Krueger Road gate. EOG sought a declaration that this restriction only applied when traversing to and from the frac pond and designated water wells.

Additionally, EOG sought summary judgment against the Davenports' fraudulent inducement and statutory fraud claims. The trial court ultimately granted EOG's summary judgment motions and denied the Davenports' motion.

A jury trial on the merits was held on September 23, 2024. Prior to resting their case-in-chief, the Davenports requested leave to amend their petition to include the affirmative defense of excuse by prior material breach. The trial court denied this request. After the Davenports rested, EOG moved for directed verdict on the Davenports trespass action, which the trial court granted. The jury found that the Davenports—not EOG—breached the WPA and awarded EOG $14,954,784 in damages. The trial court signed a final judgment based upon the jury's verdict. This appeal followed.

**DISCUSSION**

The Davenports raise five issues on appeal; we address each issue in turn.

1. <u>The Trial Court Did Not Err in Granting EOG's Motions for Summary Judgment</u>

The Davenports contend the trial court erred by granting EOG's motions for summary judgment. We disagree.

1.1 <u>Standard of Review</u>

A trial court's grant of summary judgment is reviewed de novo. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). We take as true all evidence favorable to the nonmovant. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). All doubts and reasonable inferences are resolved in the nonmovant's favor. *Id.*

Under the traditional standard, movants must demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). If the movant carries this burden, the burden shifts

and the nonmovant must raise a genuine issue of material fact to preclude summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

Under either type of motion for summary judgment, a genuine issue of material fact exists if more than a scintilla of evidence is produced as to each essential element of the cause of action or defense challenged. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when it would enable reasonable and fair-minded people to differ in their conclusion; whereas the evidence is less than a scintilla if it is so weak as to do no more than create a mere surmise or suspicion of fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

Because the parties filed competing summary judgment motions, we must consider the "evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment the trial court should have rendered." *Valence Operating Co.*, 164 S.W.3d at 661 (citation modified).

### 1.2  Construction of the WPA

The Davenports and EOG each argued for competing interpretations of the WPA. Specifically, section 9 of the agreement states:

> 9.  EOG shall enter and exit the [Davenports'] Lands through the Krueger Rd. gate. EOG agrees to use existing roads that will be designated by Grantor ("Designated Roads") over [the Davenports'] Lands covered hereby for ingress and egress to the Frac Pond and/or designated water wells and agrees to maintain such roads in good condition at all times. EOG shall promptly repair any damages or ruts caused by EOG's use of Designated Roads.

Neither party argues that section 9 is ambiguous. The Davenports read section 9 as restricting all of EOG's access—for *any* reason—to the Krueger Road gate. EOG reads this Krueger Road gate restriction as applying only when using the frac pond and designated water wells.

"When a contract's meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the [contract]." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). "'To achieve this goal, we examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined.'" *Myers-Woodward, LLC v. Underground Services Markham, LLC*, 716 S.W.3d 461, 473 (Tex. 2025) (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). We give the words within the instrument their plain, ordinary, and generally accepted meaning unless the contract directs otherwise. *URI*, 543 S.W.3d at 764. We also presume that the parties intended every contract clause to have some effect. *Heritage Res., Inc.*, 939 S.W.2d at 121.

In arguing that the WPA restricted all access solely to the Krueger Road gate, the Davenports focus on the first sentence of section 9. Read in isolation, this sentence supports the Davenports' interpretation. "But we do not read contractual phrases in isolation, and we must avoid . . . adopting a wooden construction foreclosed by the legal text's context." *Point Energy Partners Permian, LLC v. MRC Permian Co.*, 669 S.W.3d 796, 808 (Tex. 2023) (citation modified). Instead, we must utilize "a holistic approach aimed at ascertaining intent from all words and all parts of the" WPA. *Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016).

In examining the entirety of the WPA, we first note that its purpose clause provides EOG "the right of ingress and egress on designated roads for the purpose of producing, operating, and obtaining water from Grantor's Frac Pond . . . and / or designated water wells." This clause mirrors the language of section 9, and strongly suggests the "enter and exit" provision is limited in scope. Section 9 itself encapsulates EOG's agreement to (1) use the roads designated by the Davenports and (2) maintain these designated roads.

Additionally, there are references throughout the WPA to various EOG activities both on and off the Davenports' land, including "oil and gas operations" and a catchall for "all operations" on the Davenports' land. For example, under section 15, EOG agreed "to use reasonable care at all times in all of EOG's *operations under this Agreement* to prevent injury or damage to livestock, wildlife, buildings or other property." (emphasis added). Conversely, section 17 requires EOG to "provide trash trailers or containers capable of holding . . . all trash produced by EOG's *operations on the [Davenports'] Lands*." (emphasis added).

Had the parties intended to restrict EOG's access *for all purposes* solely to the Krueger Road gate, they could have expressly done so. When viewed in the context of the entire agreement, it is not reasonable to conclude that section 9 limits *all operations*. *See TotalEnergies Petrochemicals & Ref. USA, Inc. v. Kinder Morgan Petcoke, LP*, 658 S.W.3d 647, 663 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (holding that "[c]ourts do not interpret contracts as if to insert provisions the parties could have included, nor . . . imply restraints for which they have not bargained.").

The only reasonable interpretation of section 9 is that whenever EOG ingresses or egresses over designated roads to the frac pond and designated water wells, its journey must always begin and end at the Krueger Road gate. We thus conclude the trial court correctly adopted EOG's interpretation of that provision and overrule the Davenports' first issue.

### 1.3 The Trial Court Did Not Err In Granting Summary Judgment Relief Against the Davenports' Fraud Claims

In their second issue, the Davenports challenge the trial court's summary judgment rulings on their fraudulent inducement and statutory fraud claims. When—as here—both traditional and no-evidence summary judgment motions are filed, we review the no-evidence motion first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). "If the non-movant fails to overcome its

no-evidence burden on any claim, we need not address the traditional motion to the extent it addresses the same claim." *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). Both of EOG's no-motions challenge all elements of the Davenports' statutory fraud and fraudulent inducement claims. Thus, the Davenports were required to present more than a scintilla of evidence supporting each element of their fraud claims to preclude summary judgment. *See JLB Builders, L.L.C.*, 622 S.W.3d at 864.

Fraudulent inducement requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019) (listing elements for fraudulent inducement). "The elements of statutory fraud are essentially identical to the elements of common law fraud except the transaction must involve real estate or stock." *Rymes v. Caribbean Cowboy, LLC*, No. 04-12-00032-CV, 2013 WL 363405, at *5 (Tex. App.—San Antonio Jan. 30, 2013, pet. denied) (mem. op.).

Focusing on the fourth element, we note that a recipient of a fraudulent misrepresentation cannot simply rely on its truthfulness, instead there must be a showing that the reliance was justifiable. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 423–25 (Tex. 2015). "Whether a party's reliance is justifiable is ordinarily a fact question but the element may be negated as a matter of law when circumstances exist under which reliance cannot be justified." *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 558 (Tex. 2019). To determine whether reliance was justifiable, we must consider the nature of the relationship between EOG and the Davenports, along with the WPA. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,

546 S.W.3d 648, 654 (Tex. 2018) (citing *AKB Hendrick, LP v. Musgrave Enterprises, Inc.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no pet.)). As stated in *AKB*:

> A party to an arm's length transaction must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated; a failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party.

380 S.W.3d at 232. Consequently, any party to an arm's length transaction that culminates in a written contract "cannot justifiably rely on oral misrepresentation regarding the contract's unambiguous terms." *Westergren*, 453 S.W.3d at 424–25.

The evidence presented establishes that the WPA was an arm's length transaction between sophisticated parties. Dean Davenport attested that "[s]ince the early 1980s, [he had] worked in and around the oil and gas industry in various capacities." Being "very familiar with the amount of traffic generated by active oil and gas drilling and production operations," Dean Davenport "refused to enter a WPA without the entire Garner Lease being burdened with a single point of access to" Krueger Road. Consequently, during his negotiations with EOG, Dean Davenport "made it very clear that any agreement allowing for the purchase of water from the ranch's wells for EOG's oil and gas operations would require EOG to limit all ranch ingress and egress through Krueger Road." Furthermore, it is undisputed that the Davenports were represented by counsel while negotiating the terms of the WPA. Resultantly, the Davenports could not—as a matter of law—justifiably rely on EOG's oral misrepresentation that was contradicted by the unambiguous terms of the WPA.

Accordingly, because EOG conclusively negated the reliance element of the Davenports fraudulent inducement and statutory fraud claims, the trial court properly granted summary judgment.

2. <u>The Evidence Is Sufficient to Support the Jury's Verdict</u>

The Davenports third issue challenges the sufficiency of the evidence presented at trial in support of the jury's finding that EOG did not breach the WPA. They also contend the trial court abused its discretion by admitting hearsay. We disagree.

2.1 <u>Standard of Review</u>

In our legal sufficiency review, we "must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). If the party attacking the legal sufficiency of an adverse finding carried the burden of proof, then we must sustain the judgment unless the record conclusively establishes all vital facts in support of the issue. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017) (citations omitted).

In our factual sufficiency review of a finding on which the appellant carried the burden of proof at trial, we examine all the evidence and set aside the verdict "only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *City of Keller*, 168 S.W.3d at 826 (citations omitted); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

Under both the legal and factual sufficiency reviews, we acknowledge that jurors are the sole judges of witnesses' credibility, are free to believe one witness over another, and that we cannot substitute our judgement for that of the jury. *City of Keller*, 168 S.W.3d at 819.

2.2 <u>The Evidence Is Legally Sufficient to Support the Jury's Finding That EOG Did Not Breach the WPA</u>

Question 1 charged the jury: "Did EOG fail to comply with the Water Purchase Agreement?"

The elements for breach of contract are "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged

as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied). The parties do not contest the first and second elements, so we turn our attention to the evidence supporting the third element: breach.

At trial, the Davenports argued that EOG breached the WPA on two separate occasions: April 5, 2023, and April 21, 2023. With regards to the alleged April 5, 2023, breach, Dean Davenport testified that EOG breached the WPA by cutting a fence in furtherance of constructing the Rancho Derecho gate. However, Dean Davenport testified unequivocally that EOG did not breach the WPA on April 5, 2023. Additionally, there was testimony that the location of the cut gate in question did not belong to the Davenports. Because we must assume that the jurors resolved this conflict in accordance with their verdict, we turn our focus to the evidence relating to EOG's alleged April 21, 2023, breach. *City of Keller*, 168 S.W.3d at 820.

The evidence at trial conclusively established that after the parties entered into the WPA, on April 21, 2023, EOG's sole freshwater contractor, Tin Cup, traversed through the Rancho Derecho—rather than the Krueger Road gate—with a deployer and skid steer loaded on its flatbed trailer. The record also firmly established that the deployer and skid steer in question are utilized to move "flat lines," which are collapsable rubber lines used to hose water to well sites. However, on cross-examination, Dean Davenport testified that he did not witness Tin Cup travel to either the frac pond or designated water wells. In fact, he stated that after he saw Tin Cup travel "to a Bulliet Facility that was being built. [He] photographed it, and videoed it, and [he] left." And in our review of the record, we found no evidence that Tin Cup ingressed or egressed to the frac pond or designated water wells on April 21, 2023. Since the WPA required entering through the Krueger Road gate only when going to the frac pond or designated water well, the record fails to conclusively establish that EOG breached.

Turning to our factual sufficiency review, we encounter the same problem: there is no evidence establishing that Tin Cup—after traversing through the Rancho Derecho gate—ingressed or egressed to the frac pond or designated water wells in violation of the WPA. The evidence at trial established (1) the Rancho Derecho gate's road only extended to EOG's Bulliet Production Facility and was not connected to the frac Pond or designated water wells, (2) EOG was not pumping water during the time period the alleged breach occurred, and (3) the complained of skid steer was utilized to move flat lines out of the Bulliet Production Facility's construction site. Furthermore, the Rancho Derecho gate logs—which contain who entered or exited through the gate and their destination—were admitted into evidence. These logs conclusively established that Tin Cup traversed through the Rancho Derecho gate on 248 separate occasions; however, Morrison—EOG's corporate representative—testified that those entries were related to "fuel or light tower deliveries or trash." And the gate logs do not reveal that Tin Cup's logged destination included the frac pond or designated water wells.

To this end, the jury's finding that EOG did not breach the WPA is not so against the great weight and preponderance of the evidence that their answer to Question 1 is clearly wrong and unjust. *City of Keller*, 168 S.W.3d at 826.

### 2.3 The Exclusion of Morrison's Testimony Does Not Alter Our Sufficiency Review, nor Is It an Independent Ground for Reversal

We turn next to the Davenports' challenge to the admissibility of portions of Jake Morrison's testimony. Specifically, they argue that Morrison's testimony—based on GPS data and out-of-court statements from Tin Cup's employees—was inadmissible hearsay and the only evidence controverting EOG's breach.

"Generally, rulings on the admissibility of evidence are reviewed for abuse of discretion." *Ortiz v. Nelapatla*, No. 23-0953, 2026 WL 1189969, at *3 (Tex. May 1, 2026). "A trial court

abuses its discretion when it rules without regard for any guiding rules or principles." *In re E.A.K.*, 192 S.W.3d 133, 140 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). However, for a judgment to be reversed based upon the trial court erroneously admitting evidence, it must be shown that "the error was reasonably calculated to cause and probably did cause rendition of an improper judgment." *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)

As already discussed, this testimony was not the only evidence that controverted the Davenports' claim that EOG breached the WPA. Thus, even if we were to assume that this testimony was erroneously admitted, we cannot conclude the error was harmful. Because the Davenports cannot demonstrate the case turned solely on Morrison's testimony, reversal is not required. *See Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) (holding that after a court determines admission of testimony was error, it must "review the entire record, and require the complaining party to demonstrate that the judgment turn[ed] on the particular evidence admitted" (citations omitted)).

We overrule the Davenports' third issue.

3. The Trial Court Did Not Err in Granting Directed Verdict Against the Davenports' Trespass Action

In their fourth issue, the Davenports argue that the trial court erred in granting EOG's motion for directed verdict against their trespass action. We disagree.

3.1 Standard of Review

We review a directed verdict under the same legal sufficiency standard utilized in reviewing no-evidence summary judgments. *City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022). A directed verdict is proper "when no evidence supports a vital fact." *Id.* We review the evidence in the "light favorable to the party suffering an adverse judgment, crediting all reasonable inferences and disregarding evidence and inferences to the contrary." *Id.*

3.2 <u>The Davenports' Trespass Action Lacked Evidence of an Essential Element</u>

At trial, the Davenports characterized their trespass theory as an application of the accommodation doctrine.[2] Despite the directed verdict, the Davenports' accommodation doctrine theory was submitted to the jury. Regardless, we will review the Davenports' trespass action.

Common law trespass to real property is an unauthorized entry upon the land of another. *Env't. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 422 (Tex. 2015). In their brief, the Davenports argue they raised a fact issue. Specifically, they claim the evidence established that EOG trespassed by unreasonably constructing the caliche road, mulching trees for the installation of a pipeline, and installing above-ground power lines. The only question then is whether these entries were unauthorized.

EOG is the successor in interest to the mineral estate as provided in the Garner lease. As the "party possessing the dominant mineral estate" EOG had "the right to go onto the surface of the land to extract the minerals, as well as those incidental rights reasonably necessary for the extraction." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248–49 (Tex. 2013). At trial, Dean Davenport acknowledged EOG's rights as a dominant estate owner to enter their lands to lay pipelines; build roads, tanks, power stations, telephone lines, and other structures; and drill oil and gas wells. However, Dean Davenport did testify that EOG's construction of above-ground power

---

[2] In their live pleading, the Davenports' trespass to real property cause of action complains that EOG's use of the surface for road construction, as well as its planned construction of aboveground power lines on the ranch, is unnecessary, excessive, and does not reasonably accommodate existing use of the surface. Furthermore, at the hearing on EOG's directed verdict, the Davenports' counsel stated:

> Mr. Davis: In addition, Judge, in the trespass in this case, it's a little bit different. It's not a traditional trespass like someone coming into your house. It's tied to the reasonable necessity and accommodation, and there's been plenty of testimony about that. And in the cause of action of trespass, it isn't only that they entered without consent, but that they used your property beyond the consent that was given.

lines and a road, along with over-mulching, failed to reasonably accommodate the Davenports' use of the land.

To obtain relief on this claim, the Davenports had to establish that (1) EOG's use of their land completely precluded or substantially impaired their existing use, (2) the Davenports had no reasonable alternative methods available by which their existing use could continue, and (3) that EOG had a reasonable, customary, and industry-accepted alternative available which would allow it to recover their minerals and also allow the Davenports to continue their existing use. *Merriman*, 407 S.W.3d at 249.

Dean Davenport testified that in order to conduct wildlife management on their land, he "fl[ies over] the ranch . . . [i]n a helicopter . . . looking for hogs and stuff like that." However, there was no evidence presented that the powerlines completely or substantially impaired his ability to conduct flyovers, nor did he testify that there was no other reasonable alternative to conduct wildlife management.

The same can be said of EOG's mulching and construction of the road. It was established that EOG mulched a 50-70 foot wide area stretching 5.5 miles in order to trench a 12-inch pipeline. It also constructed a road which caused some hardship to the Davenports and their employee. However, the Davenports presented no evidence of their existing use being completely or substantially impaired or that no alternative existed.

Accordingly, the trial court did not err in granting a directed verdict against the Davenports' trespass action. We overrule the Davenports' fourth issue.

4. <u>Any Error in the Denial of the Davenports' Trial Amendment Was Harmless</u>

Finally, the Davenports assert that the trial court abused its discretion by denying their request for a trial amendment to plead prior material breach. We disagree.

Rule 66 permits trial courts to "allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits." TEX. R. CIV. P. 66.

The Davenports sought to amend their pleadings just prior to closing their case-in-chief. Assuming without deciding that the trial court abused its discretion by denying the Davenports' mid-trial request for leave to amend, any error was harmless. Specifically, in making their request, the Davenports made clear the prior material breach was based on the same operative facts as their "affirmative claim for breach" of contract against EOG.

Assuming without deciding that the trial court erred in denying the Davenports' request, it must have caused the rendition of an improper judgment for reversal. *Gee*, 765 S.W.2d at 396. Error in the omission of an issue is harmless if the jury's finding to other issues are sufficient to support the judgment. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). In *Shupe*, the supreme court held that, in a personal injury suit, the omission of a negligent entrustment instruction against a truck driver was harmless because the jury declined to find that the truck driver acted negligently on the occasion in question. *Id.* at 580.

Here, because the Davenports' affirmative defense relied on the same operative facts as its breach of contract claim. Thus, the jury's finding that EOG did not breach the WPA is sufficient to support the judgment, rendering any error harmless. TEX. R. APP. P. 44.1; *see also Polk v. City of Killeen*, No. 03-05-00778-CV, 2007 WL 924808, at *3 (Tex. App.—Austin Mar. 28, 2007, no pet.) (mem. op.).

We overrule the Davenports' fifth issue.

**CONCLUSION**

Having overruled each of the Davenports' appellate issues, we affirm the judgment of the trial court.


Velia J. Meza, Justice