# IN THE SUPREME COURT OF TEXAS

No. 18-0944

LEMUEL DAVID HOGAN, PETITIONER,

v.

STEPHANIE MONTAGNE ZOANNI, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

JUSTICE BOYD, concurring.

As we've noted before, it's "at least theoretically possible that legislators—like judges or anyone else—may make a mistake."[1] Unfortunately, the Texas Defamation Mitigation Act (DMA)[2] may very well prove the point. But if so, we are "not empowered to 'fix' the mistake."[3] Instead, we must do our best to construe and apply the DMA as written. The Court makes a valiant effort, but its reading contravenes three fundamental rules that guide our construction of statutes: it disregards the common, ordinary meaning of undefined terms, it overlooks the statute's use of different words in different provisions, and it renders some provisions completely superfluous and meaningless. The dissenting opinion also makes a valiant effort, but its reading also overlooks the use of different words in different provisions and renders some provisions meaningless. Under the

---

[1] *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004).

[2] TEX. CIV. PRAC. & REM. CODE §§ 73.051–.062.

[3] *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 638 (Tex. 2010).

facts of this case, the Court ultimately reaches the right result, but its reasoning distorts the DMA's provisions and thus alters its effect in future cases. I join in the Court's judgment but respectfully cannot join the reasoning expressed in its opinion.

**I.**
**The DMA and the Uniform Model Act**

To understand the problem we address in this case, it is helpful to begin with an understanding of the uniform model act on which the DMA is based.[4] Like the model act, the DMA's stated purpose is "to provide a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury."[5] But the revisions the Texas Legislature made when it adopted the model act make it difficult to determine the method the legislature intended to provide.

The uniform model act on which the DMA is based is called the Uniform Correction or Clarification of Defamation Act (UCCDA).[6] The Uniform Law Commission adopted the UCCDA in 1993 as a last-ditch effort to salvage part of the commission's extended, yet ultimately unsuccessful, effort to offer a much broader Uniform Defamation Act.[7] Despite the commission's

---

[4] *See* H. Comm. on Judiciary & Civil Jurisprudence, *Bill Analysis*, Tex. H.B. 1759, 83d Leg., R.S., No. 83R 23145, at 1 (2013), available at https://capitol.texas.gov/tlodocs/83R/analysis/pdf/HB01759H.pdf#navpanes=0.

[5] TEX. CIV. PRAC. & REM. CODE § 73.052.

[6] *See* Uniform Correction or Clarification of Defamation Act, 12 U.L.A. 291 (1996) [hereinafter UCCDA], available                                                                                                      at https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=0454cc22-7d14-a685-c361-f0b12ee83318&forceDialog=0.

[7] Cynthia Nance, *The Uniform Correction or Clarification of Defamation Act: How Not to Reform Arkansas Defamation Law*, 51 ARK. L. REV. 721, 722 (1998) [hereafter *Arkansas Defamation Law*].

efforts, however, the UCCDA has been a "colossal flop."[8] After nearly thirty years, only three states—Texas, North Dakota, and Washington—have enacted the UCCDA in any form.[9]

Like the UCCDA, all three state statutes (including the Texas DMA) provide that a plaintiff "may maintain an action for defamation only if" (1) the plaintiff has made a timely and sufficient (or "adequate") request for correction or clarification from the defendant (a Request), or (2) without having received a Request, the defendant has voluntarily made a correction or clarification (a Correction).[10] If a defendant "intends to challenge" the timeliness or sufficiency of a Request, the defendant must raise that challenge by filing a motion within sixty days after service of citation.[11] If a defendant successfully challenges a Request's timeliness or sufficiency, the

---

[8] Richard J. Peltz-Steele, *The New American Privacy*, 44 GEO. J. INT'L L. 365, 390 (2013).

[9] *See Enactment Map of Uniform Correction or Clarification of Defamation Act*, UNIFORM LAW COMMISSION, https://www.uniformlaws.org/committees/community-home?CommunityKey=6ba5d1ed-8924-48aa-81e9-1ed0f7a9f47d (last visited May 27, 2021); *see also* N.D. CENT. CODE §§ 32-43-01–32-43-10; WASH. REV. CODE §§ 7.96.010–.901. Other states have enacted similar statutes, but instead of using the UCCDA's "may maintain an action only if" language, they simply limit the damages a plaintiff who fails to mitigate can recover. *See, e.g.*, CAL. CIV. CODE § 48a (providing that a defamation plaintiff "shall only recover special damages unless a correction is demanded and is not published or broadcast, as provided in this section"); CONN. GEN. STAT. § 52-237 (providing that, absent proof of "malice in fact," a plaintiff may recover "only actual damage" unless the "defendant, after having been requested by the plaintiff in writing to retract the libelous charge, . . . failed to do so within a reasonable time"); FLA. STAT. § 770.02 (providing that a plaintiff "shall recover only actual damages" if the defendant timely made "a full and fair correction, apology, or retraction"); GA. CODE § 51-5-11 (providing that defendant who timely made a retraction in response to plaintiff's timely request "shall be liable only to pay actual damages"); MASS. GEN. LAWS ch. 231, § 93 (providing that plaintiff "shall recover only for any actual damage sustained" if defendant "publishes a reasonable retraction"); MINN. STAT. § 548.06 (providing that plaintiff "shall recover no more than special damages, unless a retraction be demanded and refused as hereinafter provided").

[10] *See* UCCDA § 3(a); N.D. CENT. CODE § 32-43-03; TEX. CIV. PRAC. & REM. CODE § 73.055(a); WASH. REV. CODE § 7.96.040. Each of the states made minor revisions when adopting the UCCDA. Washington, for example, added a reference to "an action for defamation *or another claim covered by this chapter*." WASH. REV. CODE § 7.96.040 (emphasis added). And Texas used the word "sufficient" where the UCCDA used "adequate" and added a reference to a "retraction" in addition to a "correction" or "clarification." *Compare* TEX. CIV. PRAC. & REM. CODE § 73.055(a), *with* UCCDA § 3(a).

[11] UCCDA § 7(b); *see also* TEX. CIV. PRAC. & REM. CODE § 73.058(c).

plaintiff cannot "maintain an action for defamation." The commission, courts in other states, and commentators have consistently agreed that if the plaintiff cannot "maintain the action," the claim cannot be filed, or if already filed, must be dismissed.[12]

But "to avoid technical requirements that can often serve as traps for unwary plaintiffs," the commission included a provision in the UCCDA that expressly allows a plaintiff's lawsuit to serve as the required Request.[13] Because a Request is "timely if made within the period of limitation for commencement of an action for defamation,"[14] a timely filed complaint (or petition, in Texas parlance) "will always serve as a timely request for correction or clarification."[15] And— at least, in the commission's view—normal pleading rules should apply and allow the plaintiff "to amend a complaint that fails to contain the information required" to make the Request sufficient.[16] By allowing the plaintiff's original pleading to serve as a timely Request and then allowing the plaintiff to amend the pleading to add any information necessary to make the Request sufficient, the UCCDA allows a plaintiff who files suit before limitations expires but without first making a

---

[12] *See* UCCDA § 3 cmt. (referring to the "preclusive effect" of an inadequate Request or the failure to make any Request); *In re Disciplinary Action Against Dvorak*, 611 N.W.2d 147, 150 (N.D. 2000) (stating Request "was a predicate requirement to maintaining [the defamation] action"); *Momou v. Case New Holland*, No. 3:09-cv-15, 2010 WL 11627668, at *6 (D.N.D. Jan. 19, 2010) (stating plaintiff who has not made a timely Request cannot "file a claim for defamation"); *Snook v. Whatcom Humane Soc'y*, No. C18-313 RSM, 2018 WL 3752221, at *2–3 (W.D. Wash. Aug. 8, 2018) (dismissing claims for failure to make an adequate Request); Jane E. Kirtley, *Uncommon Law: The Past, Present and Future of Libel Law in A Time of "Fake News" and "Enemies of the American People,"* 2020 U. CHI. LEGAL F. 117, 122 (2020) (characterizing Request as a "prerequisite to a libel suit"); *Arkansas Defamation Law*, *supra* note 7, at 743 ("The right to sue under the UCCDA hinges upon the issuance of, or request for, a correction or clarification.").

[13] UCCDA § 3(d) & cmt.

[14] *Id.* § 3(b); *see also* TEX. CIV. PRAC. & REM. CODE § 73.055(b).

[15] UCCDA § 3 cmt.

[16] *Id.*

Request to avoid dismissal, while still promoting "the Act's purpose of resolving or limiting defamation disputes prior to litigation."[17]

The Texas Legislature, however, chose to omit the UCCDA's provision that expressly allows the plaintiff's pleading to constitute a Request.[18] Instead, the legislature added a new provision—which neither the UCCDA nor any other state's law includes—that allows a defendant "who does not receive *a written [R]equest* for a correction, clarification, or retraction, as required by Section 73.055," to "file a plea in abatement not later than the 30th day after the date the [defendant] files an original answer in the court in which the suit is pending."[19] Apparently inspired by a nearly identical provision of the Texas Deceptive Trade Practices-Consumer Protection Act, the DMA allows a defendant "who does not receive a *written [R]equest*" to force the plaintiff to make a written Request by abating the lawsuit until the plaintiff does so.[20]

But the DMA's abatement provision says the defendant "may" file a plea in abatement; it does not *require* a defendant who has not received a written Request to seek abatement.[21] And as

---

[17] *Id.*

[18] *Compare* TEX. CIV. PRAC. & REM. CODE § 73.055, *with* UCCDA § 3(d).

[19] TEX. CIV. PRAC. & REM. CODE § 73.062(a) (emphasis added). The bill as originally introduced did not include the abatement provision, but the House Committee added the provision to the Committee's substitute bill. *Compare* Tex. H.B. 1759, 83rd Reg. Sess. (2013) (as introduced), available at https://capitol.texas.gov/tlodocs/83R/billtext/pdf/HB01759I.pdf#navpanes=0, *with* Tex. C.S.H.B. 1759, 83d Reg. Sess. (2013) (committee substitute), available at https://capitol.texas.gov/tlodocs/83R/billtext/pdf/HB01759H.pdf#navpanes=0; *see also* Mark C. Walker, *The Essential Guide to the Texas Anti-SLAPP Law, the Texas Defamation Mitigation Act, and Rule 91a*, 91 THE ADVOC. (TEXAS) 280, 336 (2020) ("The Committee revised the bill, adding an abatement section that outlines a procedure for publishers to file a plea in abatement if a written request for a correction, clarification, or retraction is not received.").

[20] *Compare* TEX. CIV. PRAC. & REM. CODE § 73.062, *with* TEX. BUS. & COM. CODE § 17.505(c)–(e).

[21] TEX. CIV. PRAC. & REM. CODE § 73.062(a) (providing that defendant "*may* file a plea in abatement") (emphasis added).

explained, a plaintiff who has failed to make a timely and sufficient Request cannot "maintain" the defamation action unless the defendant has voluntarily made a Correction without having received a Request.[22] So the issue is: what are the rights of a defendant who has not voluntarily made a Correction when (1) the plaintiff files suit without having made any written Request or (2) the plaintiff files suit after making a written Request but the Request was insufficient or untimely? Is abatement the defendant's only remedy in both situations because section 73.062(a) says a defendant who did "not receive a written [R]equest as required by Section 73.055" *may* file a plea in abatement? Or can the defendant demand dismissal in both situations because section 73.055(a) says the plaintiff cannot "maintain" the action? Or does the outcome depend on which of the two circumstances occurs; that is, does it depend on whether the plaintiff made a written Request that was insufficient or untimely or the plaintiff failed to make any written Request at all?

Writing for the Court's plurality, JUSTICE DEVINE would hold that section 73.055(a)'s statement that a plaintiff "may maintain an action for defamation only if" does not mean the action "must be dismissed unless." *Ante* at ___. Instead, concluding that section 73.062(a)'s abatement provision informs the meaning of section 73.055(a)'s statement that the plaintiff cannot "maintain" the action, the plurality would hold that abatement is the only available remedy when a plaintiff files suit after serving a written Request that was insufficient or untimely or without having served any written Request at all. *Ante* at ___. Writing for the dissenting Justices, the CHIEF JUSTICE would hold that section 73.055(a)'s "maintain . . . only if" language plainly means the claims "must be dismissed unless," and thus requires the claims to be dismissed if the plaintiff made a written

---

[22] *Id.* § 73.055(a).

6

Request that was insufficient or untimely or failed to make any written Request at all. *Post* at ___.
To accommodate section 73.062(a)'s abatement provision, the dissenting Justices would hold that
the defendant can choose between abatement and dismissal if the plaintiff made a written Request
that was insufficient but timely, but only if there's still time for the plaintiff to make a sufficient
and timely Request. *See post* at ___. Both readings, however, neglect key rules that govern our
construction of statutes. We must give undefined words their common, ordinary meaning,[23] give
meaning to the statute's use of different words in different provisions,[24] and ensure that no
provision is rendered superfluous or meaningless.[25] Following these rules, I would hold that the
DMA requires dismissal when the plaintiff files suit after making a "written [R]equest" that was
otherwise insufficient or was untimely, and permits abatement when the plaintiff files suit without
having made any "written [R]equest" at all.

## II.
## The DMA Provisions

We must, of course, allow the statute's words to dictate the statute's meaning. On the issue
this case presents, three of the DMA's provisions are crucial. The first is section 73.055(a):

---

[23] *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34 (Tex. 2017) ("Because the statute and the rule do not define these key terms, we must apply their common, ordinary meaning unless a contrary meaning is apparent from the statute's language.").

[24] *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 564 (Tex. 2016) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the [C]ourt assumes different meanings were intended." (quoting *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995), in turn quoting 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.06 (5th ed. 1992))); *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017) ("And, usually at least, when we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning.").

[25] *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous.").

> A person may *maintain an action* for defamation only if: (1) the person has made a *timely and sufficient* [R]equest . . . from the defendant; or (2) the defendant has made a [C]orrection . . . .[26]

To be timely, the Request must be "made during the period of limitations for commencement of an action for defamation."[27] To be sufficient, the Request must be served on the defendant; must reasonably identify and be signed by the plaintiff (or the plaintiff's attorney or agent); must "state[] with particularity the statement alleged to be false and defamatory" and "the time and place of publication," if known; must explain why the statement was defamatory; and—importantly—must be "*made in writing*."[28]

The second crucial provision is section 73.058(c):

> If a defendant intends to challenge the *sufficiency or timeliness* of a [R]equest . . . , the defendant must state the challenge in a motion to declare the [R]equest *insufficient or untimely* served not later than the 60th day after the date of service of the citation.[29]

Like section 73.055(a), this section expressly refers to the "sufficiency" and "timeliness" of a Request. It provides the procedure by which a defendant may challenge a Request as "insufficient or untimely," while section 73.055(a) provides that the plaintiff "may maintain an action" only if the plaintiff has made a "timely and sufficient" Request.

---

[26] TEX. CIV. PRAC. & REM. CODE § 73.055(a) (emphases added).

[27] *Id.* § 73.055(b).

[28] *Id.* § 73.055(d) (emphasis added).

[29] *Id.* § 73.058(c) (emphases added).

The third crucial provision is the abatement provision, section 73.062(a). In contrast to sections 73.055(a) and 73.058(c), this section expressly addresses a "written [R]equest" and says nothing at all about whether the Request was "timely" or "sufficient":

> A person against whom a suit is pending who does not receive a *written [R]equest . . .* , as required by Section 73.055, may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending.[30]

Working through these provisions, we must first determine what section 73.055(a) means when it says a plaintiff may "maintain an action" only if the person made a timely and sufficient Request. Using the same language, section 73.058(c) says a defendant who intends to challenge "the sufficiency or timeliness" of a Request must file a motion to declare the Request "insufficient or untimely" within sixty days after service of citation. But section 73.062(a), the abatement provision, uses distinctly different language: it permits a defendant to file a plea in abatement if the defendant did not receive "a written [R]equest" and never says anything about the Request's timeliness or sufficiency. Both the Court's plurality and the dissenting Justices overlook this distinction and as a result, misconstrue the language and render other provisions meaningless.

## A. "Maintain an action"

I agree with the dissenting Justices' conclusion that the phrase "may maintain an action . . . only if" means "must be dismissed unless." Because the DMA does not define the terms, we must apply their common, ordinary meaning unless the statutory context requires a different meaning.[31]

---

[30] *Id.* § 73.062(a) (emphasis added).

[31] *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists*, 511 S.W.3d at 34.

"To determine a statutory term's common, ordinary meaning, we typically look first to dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities."[32]

The Court's plurality relies on dictionaries that define the word "maintain" to mean "to keep in an existing state" or "to continue or preserve in."[33] Based on these definitions, the plurality concludes that a legal action that is abated is not being "maintained." But I don't find these definitions particularly helpful. A legal action that is abated may in one sense be in a different "existing state," but it is still existing and continuing—it is still being "maintained"—*as a legal action*. Instead of construing the verb "maintain" in isolation, we must construe it in context by considering its object, "an action." Addressing the phrase "maintain *an action*," rather than the single word "maintain," the phrase refers to the act of filing a suit or of continuing a suit previously filed. Contrary to the plurality's assertion that whenever "the Legislature intends dismissal as the consequence for noncompliance, it clearly says so in the statute,"[34] Texas statutes consistently use the phrase "maintain an action" to address the plaintiff's ability to file a lawsuit or to continue one

---

[32] *Id.* at 35.

[33] *Ante* at ___ (quoting *Maintain*, MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (8th ed. 1977)).

[34] *Ante* at ___.

that has been filed.[35] And our own decisions have consistently used the phrase in the same way.[36]

The Court's plurality conveniently ignores these statutes and opinions, which consistently

[35] *See, e.g.*, TEX. BUS. & COM. CODE § 17.50(c)–(e) (stating conditions on which a plaintiff may "maintain an action" for deceptive trade practices); TEX. BUS. ORG. CODE §§ 9.051(b) (stating conditions on which a foreign filing entity may "maintain an action" in Texas courts), 22.362(a) (stating conditions on which nonprofit corporation that has forfeited its right to do business in Texas may "maintain an action" in Texas courts), 152.211(a), (b) (stating bases on which a general partnership and its partners may "maintain an action" against each other), .609(a) (same, involving "withdrawn" partner), .612(a) (same, involving partner's transferee), 153.309(a) (stating conditions on which a limited partnership that has forfeited its right to transact business in Texas may "maintain an action" in Texas courts); TEX. CIV. PRAC. & REM. CODE §§ 16.028(a) (stating limitations period after which a property owner may not "maintain an action" for recovery of property), 17.028(d) (permitting financial institution that was not properly served with citation to "maintain an action" to set aside default judgment), 71.031(a) (permitting suit for death or injury occurring in foreign state or country if its laws permit plaintiff to "maintain an action" for the death or injury); TEX. EDUC. CODE § 132.121(a) (permitting person to "maintain an action" against proprietary career school or college); TEX. FIN. CODE § 392.102 (permitting person to "maintain an action" against debt collector and its surety); TEX. GOV'T. CODE § 81.072(g) (stating attorney may not "maintain an action" against complainant or witness in disciplinary proceeding due to "absolute and unqualified" immunity); TEX. HUM. RES. CODE § 121.004(b) (permitting person with disabilities to "maintain an action" for discrimination); TEX. HEALTH & SAFETY CODE §§ 171.014(b) (stating conditions under which a person may not "maintain an action" for partial-birth abortion), 241.054(d) (permitting attorney general, district attorney, or county attorney to "maintain an action" against hospital), 246.117(c) (stating conditions under which a person "may not file or maintain an action" against a continuing-care facility), 464.015(f) (permitting attorney general, district attorney, or county attorney to "maintain an action" against chemical-dependency facility), .017(e) (same, for action for civil penalty), 571.022(b) (same, for action against mental-illness facility), .023(d) (same, for action for civil penalty), 577.019(a) (permitting state to "maintain an action" against unlicensed mental-health facility), 611.007(c) (stating conditions under which a patient may not "maintain an action" against mental-health professional), 757.012(a) (permitting persons to "maintain an action" against property owner that fails to properly enclose swimming pool); TEX. LAB. CODE § 101.023(b) (permitting persons to "maintain an action" for violation of anti-picketing statute); TEX. LOCAL GOV'T. CODE § 232.008(f), (g) (permitting persons to "maintain an action" against person cancelling roadway or easement in subdivision); TEX. NAT. RES. CODE § 52.325(a) (permitting state or lessee to "maintain an action" against permittee that fails to properly restore public school lands); TEX. OCC. CODE §§ 1101.806(b), (c) (stating conditions on which a person may "maintain an action" for commission on real-estate sale), 1703.304 (stating conditions on which a person may "maintain an action" against polygraph examiner); TEX. PROP. CODE § 64.060(c) (permitting assignee of rents to "maintain an action" against assignor); TEX. WATER CODE § 13.257(i) (stating conditions under which purchaser of real property located in utility-service provider's certificated service area may not "maintain an action").

[36] *See, e.g.*, *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 779 (Tex. 2020) (interpreting statute allowing partner to "maintain an action" as granting "authority to sue"); *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 148 (Tex. 2015) (referring to party's "standing to maintain an action"); *Env't Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 425 (Tex. 2015) (stating plaintiff must establish wrongful entry upon land to "maintain an action" for trespass); *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 564 (Tex. 2014) (plurality op.) (stating that "the right to maintain an action depends upon the existence of a cause of action") (quoting *Bell v. Moores*, 832 S.W.2d 749, 752 (Tex. App.—Houston [14th Dist.] 1992, writ denied)); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 645 (Tex. 2009) (orig. proceeding) (stating wrongful-death beneficiaries may bring suit only "if the decedent would have been entitled to maintain an action for the injury"); *Nobles v. Marcus*, 533 S.W.2d 923, 925 (Tex. 1976) (stating creditor who pleads

illustrate that, under the common, ordinary meaning, an action that cannot be "maintained" must be dismissed. The plurality provides no examples in which a statute or one of our decisions equates abatement with the inability to "maintain an action," and I have found none. I agree with the dissenting Justices that, under common, ordinary usage, a legal action that cannot be "maintained" must be dismissed.

## B. Rendering other provisions meaningless

The dilemma this case presents arises from the legislature's replacement of the model act's provision allowing a lawsuit to serve as the required Request with section 73.062(a)'s provision allowing a defendant who has not received "a written [R]equest" to file a plea in abatement. If the abatement provision and section 73.055(a)'s statement that an action cannot be "maintained" both address the same circumstances, the abatement provision becomes essentially meaningless because a defendant will almost certainly choose dismissal over abatement. The Court's plurality resolves this dilemma by holding that "maintain an action . . . only if" means "must be *abated* unless," so that abatement is the statute's only remedy when a plaintiff files suit after making a written Request that was untimely or insufficient or without having made any written Request at all. But by reading the abatement provision as the only remedy for a plaintiff's failure to make a timely and sufficient Request, the plurality renders other DMA provisions meaningless.

As explained, the abatement provision states that a defendant "against whom a suit is pending who does not receive a written [R]equest . . . , as required by Section 73.055, may file a

---

fraudulent conveyance may "maintain an action" to vacate the conveyance); *Yett v. Cook*, 281 S.W. 837, 841 (Tex. 1926) (stating party must have a justiciable interest to "maintain an action").

12

plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending."[37] If (as the Court's plurality concludes) this provision offers the only remedy when a plaintiff fails to make a timely and sufficient Request, then section 73.055(a) (which provides that a plaintiff can "maintain an action" only if the plaintiff makes a timely and sufficient Request) adds no meaning to the statute at all. If we deleted section 73.055(a) completely, the statute would still mean exactly what the Court's plurality says it means.

And section 73.058(c) (which requires a defendant who intends to challenge an untimely or insufficient Request to file a motion within sixty days after service of citation) is worse than meaningless—it conflicts with the abatement provision. Under the plurality's reading, a defendant who desires to challenge the sufficiency or timeliness of a Request *must* file a motion within sixty days after service of citation (under section 73.058(c)) and *may* file a plea in abatement within thirty days after filing its original answer (under section 73.062(a)). But if, as the plurality concludes, the defendant's only remedy is abatement, then section 73.062(a) controls and section 73.058(c) is inconsistent and rendered meaningless. The plurality makes no effort to explain when, under its construction, section 73.058(c) would ever apply.

And finally, the Court's plurality's construction renders the statute's timeliness requirement completely meaningless. A Request is timely only "if made during the period of limitation."[38] Obviously, if a plaintiff makes an untimely Request before filing suit, abatement would be inappropriate because the suit must be dismissed based on limitations. But if the plaintiff

---

[37] TEX. CIV. PRAC. & REM. CODE § 73.062(a).

[38] *Id*.§ 73.055(b).

13

makes an untimely Request after having timely filed suit, abatement would still be inappropriate because the plaintiff can never make a timely Request. To avoid this result, the Court's plurality suggests that section 73.062 somehow "contemplates the possibility" that a plaintiff can make a timely Request "beyond the limitations period,"[39] but it points to nothing in the statute that even suggests that possibility. Inexplicably, the plurality acknowledges that the statute says a Request "is timely" only if made during the limitations period, but then it says a Request "served beyond the limitations period" is not "noncompliant."[40] More inexplicably, the plurality reasons that serving the Request before limitations expires is "sufficient" to make the Request timely but not "necessary" to make the Request timely.[41] So according to the plurality, a Request is timely whether filed before or after limitations expires, which means, of course, that the timeliness requirement has no meaning at all.

## C. Different language in different provisions

The fault in the plurality's approach is its failure to acknowledge that sections 73.055(a) and 73.058(c) use different language than section 73.062(a) and thus apply to different situations. Comparing these provisions and giving effect to their different language, I conclude section 73.062(a) provides for abatement only when the plaintiff files suit without having made *any written Request at all*, and only if the plaintiff can still make a timely and sufficient Request during an abatement period.

---

[39] *Ante* at ___ (citing TEX. CIV. PRAC. & REM. CODE § 73.062(a)–(c)).

[40] *Ante* at ___ (citing TEX. CIV. PRAC. & REM. CODE § 73.062(a)–(c)).

[41] *Ante* at ___.

14

As mentioned, section 73.055(a) states that a plaintiff can "maintain an action for defamation only if" the plaintiff "has made a *timely and sufficient* [R]equest."[42] To state the obvious, this section requires the plaintiff to make a Request *and* requires that the Request be timely and sufficient. Using the same language, section 73.058(c) states that a defendant may challenge "the *sufficiency or timeliness* of a [R]equest" by filing a "motion to declare the [R]equest *insufficient or untimely*."[43] It does not state that the defendant may challenge "the plaintiff's failure to make a Request" by filing a "motion to declare that the plaintiff failed to make a Request." Instead, it presumes that the plaintiff has made a Request but the defendant "intends to challenge" the Request as insufficient or untimely. Section 73.058(c) thus does not apply when the plaintiff has failed to make any Request at all. Instead, it applies only when the plaintiff has made a Request but the defendant believes the Request was insufficient or untimely. If the court agrees that the Request was insufficient or untimely, then under section 73.055(a), the plaintiff cannot "maintain [the] action" and it must be dismissed.

In clear contrast to sections 73.055(a) and 73.058(c), section 73.062(a) does not state that abatement is available when the plaintiff made an "*untimely or insufficient*" Request. Instead, it makes abatement available when the defendant does not "receive a *written [R]equest . . .* , as required by Section 73.055."[44] As mentioned, to be "sufficient," a Request must satisfy several

---

[42] TEX. CIV. PRAC. & REM. CODE § 73.055(a) (emphasis added).

[43] *Id.* § 73.058(c) (emphases added).

[44] *Id.* § 73.062(a) (emphasis added).

requirements, one of which is that it must be "made in writing."[45] Section 73.062 focuses only on that one sufficiency requirement, repeatedly referring to a "written" Request. A defendant "who does not receive *a written [R]equest*" may file a plea in abatement.[46] The abatement is automatic if the plea is verified and alleges that the defendant "did not receive *the written [R]equest* as required by Section 73.055."[47] The abatement under section 73.062(b) continues until the sixtieth day "after the date that the *written [R]equest* is served."[48] Section 73.062 never once refers to "untimeliness" or "insufficiency."

Nevertheless, the Court's plurality concludes that section 73.062 impliedly refers to a Request that is "timely and sufficient" because it refers to a "written [R]equest . . . , *as required by Section 73.055*."[49] Because section 73.055 requires a Request that is timely and sufficient, the plurality reads "as required by section 73.055" to mean a timely and sufficient Request. So the plurality construes section 73.062 to make abatement available not only when the defendant does not receive a "written [R]equest," but also when the defendant receives a written Request but the written Request was untimely or otherwise insufficient. I find this construction flawed for two reasons.

---

[45] *Id.* § 73.055(d) (stating that a Request is sufficient if it is served on the defendant, is made in writing, reasonably identifies the plaintiff, identifies the plaintiff or the plaintiff's attorney or agent, and adequately identifies the allegedly defamatory statements and their alleged defamatory meaning).

[46] *Id.* § 73.062(a) (emphasis added).

[47] *Id.* § 73.062(b)(1) (emphasis added).

[48] *Id.* § 73.062(c) (emphasis added).

[49] *Ante* at ___; *see also* TEX. CIV. PRAC. & REM. CODE § 73.062(a).

16

First, as mentioned, section 73.055 requires *both* that the plaintiff make a Request *and* that the Request be timely and sufficient. And to be sufficient, the Request must be "made in writing." So section 73.055 requires the plaintiff to make a "written [R]equest," and that's the only requirement of section 73.055 to which section 73.062 refers. Section 73.062 makes no reference to timeliness or sufficiency. It does not refer to any sufficiency requirement other than that the Request be written, and it does not refer in any way to the requirement that the Request be timely. If, as the Court's plurality concludes, "as required by section 73.055" means "timely and sufficient," section 73.062's use of the word "written" to describe the Request is completely meaningless because a Request must be written to be sufficient. It's like saying a defendant could seek abatement if the plaintiff failed to make "a written Request that is in writing." To mean what the plurality says it means, section 73.062(a) should provide for abatement when the defendant does not receive "a timely and sufficient Request, as required by section 73.055." Instead, it refers only to a "written [R]equest, . . . as required by section 73.055," without making any reference at all to whether the Request was timely or sufficient. The plurality disregards this distinctly different language without explaining any basis for doing so.

And second, if the phrase "as required by section 73.055" means that abatement is available when the plaintiff makes a written Request but the written Request is untimely or otherwise insufficient, then section 73.062(c)—which provides that the abatement "continues until the 60th day after the date that the *written [R]equest* is served" on the defendant[50]—must also refer to a Request that is timely and sufficient. But that would mean that abatement continues until the

---

[50] TEX. CIV. PRAC. & REM. CODE § 73.062(c) (emphasis added).

plaintiff makes a Request that is both sufficient and timely. And of course, if a plaintiff made an untimely Request, abating the case until the plaintiff makes a timely Request is useless, because the plaintiff could never make a timely Request. Unless we erroneously negate the timeliness requirement altogether, as the Court's plurality is forced to do, the abatement period will never end.

Reading section 73.062(a)'s language within the context of the distinctly different language of section 73.055(a) and 73.058(c), I conclude that if the plaintiff has made a written Request but the defendant believes the Request was insufficient or untimely, section 73.058(c) permits the defendant to challenge the Request in a motion to declare it insufficient or untimely. If the court "declares" that the Request was insufficient or untimely, then under section 73.055(a), the plaintiff cannot "maintain" the action and the court must dismiss it. Section 73.062(a), meanwhile, applies when the plaintiff has filed suit without having made any written Request at all. In that circumstance, instead of adopting the UCCDA's provision allowing the plaintiff's pleading to serve as a written Request, the legislature added section 73.062, permitting the defendant to seek abatement to require the plaintiff to make a written Request. But if limitations has expired or expires before the plaintiff makes a written Request in response to the defendant's abatement plea, abatement would be useless, and the court should dismiss the action under section 73.055(a) because the plaintiff can never make a timely Request.

### D. Purpose

Finally, I'm not convinced by the Court's plurality's assertion that its construction promotes the DMA's purpose of "providing plaintiffs a method to mitigate perceived damage or

18

injury" by obtaining a Correction and that "[h]olding otherwise" would be "antithetical" to that purpose.[51] Like the dissenting JUSTICES, I adhere firmly to the principle that a statute's purpose cannot trump its language. *See post* at ___. And even if the DMA's purpose mattered, mitigation is meaningful only when it occurs as quickly after the wrongful conduct as possible. The UCCDA, in fact, "is intended to encourage *early* corrections or clarifications."[52] Requiring dismissal when a plaintiff fails to make a Request before limitations expires promotes that purpose. Construing the statute so that it does not require a timely Request at all does not.

### III.
### Hogan's Claims

Applying the statute to this case, I agree with the Court's plurality that section 73.062(a)'s abatement provision applies to Hogan's claims. On March 7, 2014, Hogan sent a written Request to Zoanni, sufficiently identifying three allegedly defamatory statements.[53] Twenty days later, on March 27, 2014, Hogan timely filed this suit against Zoanni, asserting defamation claims based on the statements identified in his Request. Hogan thus made a timely Request that was sufficient as to the three allegedly defamatory statements, as section 73.055(a) requires.

But two years later, on April 15, 2016, Hogan filed an amended petition alleging Zoanni also defamed Hogan through nine additional statements. Hogan never made any written Request that identified these nine statements. Ten days later, when the trial began on April 25, 2016, Zoanni

---

[51] *Ante* at ___.

[52] UCCDA § 3 cmt. (emphasis added).

[53] Zoanni acknowledged "[o]ut of an abundance of caution, common courtesy, [and] to give opposing counsel the benefit of the doubt," that the letter also identified a fourth statement. She later "independently corrected" that statement. 555 S.W.3d 321, 324 (Tex. App.—Houston [1st Dist.] 2018).

moved for a directed verdict on the claims based on the nine new statements, arguing that Hogan could not "maintain" that action because he had not made a timely and sufficient Request as to those nine statements. But as to those nine statements, Hogan never made any written Request at all before he filed his amended petition asserting claims based on those statements. The trial court denied Zoanni's dismissal motion, and the jury found her liable based on all of the allegedly defamatory statements. The court of appeals reversed, holding that Hogan cannot recover based on the nine additional statements because he never made a Request as to those statements. And because it is impossible to determine how the jury calculated damages based on the nine additional statements, the court remanded for a new trial based only on the three original statements and the one corrected statement. 555 S.W.3d at 331.

Under my reading of the DMA, the court of appeals erred because, as to the nine additional statements, Hogan never made any written Request at all. The written Request Hogan sent on March 7, 2014, was not merely insufficient as to the nine additional statements. If that were true, section 73.058(c) would have required Zoanni to file a motion challenging the Request's sufficiency within sixty days after she was served with citation. But of course, she could not have done that, because she could not have known that Hogan would later complain about and assert claims based on the nine additional statements, two years after filing suit and serving Zoanni with citation. Instead, although Hogan's March 2014 written Request was timely and sufficient as to the three original statements, Hogan never made any written Request at all regarding the nine new statements. Section 73.062(a) thus applies, because it applies when the plaintiff fails to make any

"written [R]equest" at all, and sections 73.055(a) and 73.058(c) do not apply, because they apply when the plaintiff makes a written Request that is untimely or otherwise insufficient.

Once Hogan amended his petition to assert claims based on the nine additional statements, section 73.062(a) permitted Zoanni to file a plea in abatement within thirty days after filing her "original answer." Because I agree with the Court's plurality that the answer Zoanni filed in response to Hogan's new claims based on the nine new statements was her "original answer" as to those claims, *see ante* at ___, I agree that Zoanni could have timely sought abatement in response to Hogan's new claims. The only remaining question, then, is whether Hogan could still make a timely Request at that point. The statute of limitations had clearly expired by then, but as the Court's plurality notes, Hogan pleaded the relation-back doctrine in his seventh amended petition. Under that doctrine, limitations had not expired on Hogan's claims based on the nine additional statements, and Hogan could still make a timely Request regarding those statements.[54] *See ante* at __. So Zoanni could seek abatement to require Hogan to make that Request as section 73.062(a) allowed. But she declined abatement when the topic was raised. Instead, she sought dismissal based on sections 73.055(a) and 73.058(c), which did not apply. Under the circumstances, I agree with the Court's plurality that Zoanni cannot now seek abatement. *See ante* at ___. Having

---

[54] The relation-back doctrine provides that an amended petition "is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence." TEX. CIV. PRAC. & REM. CODE § 16.068. "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) (quoted in *Lexington Ins. Co. v. Daybreak Express, Inc.*, 393 S.W.3d 242, 244 (Tex. 2013)).

Zoanni did not dispute the application of the doctrine in her motion for directed verdict or any other time before the trial court. Neither did she challenge the doctrine's applicability to the court of appeals. Because Zoanni has therefore waived any challenge to the relation-back doctrine, I would assume without deciding that the doctrine applies. *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 122 (Tex. 2004).

proceeded to trial on all of the allegedly defamatory statements, Zoanni must now accept the judgment based on the jury's verdict unless some other basis exists for reversing that judgment. As the plurality explains, Zoanni raised additional bases, but the court of appeals did not reach or address them. I agree with the plurality's decision to remand the case to the court of appeals so that it may now consider those unaddressed issues. *See ante* at ___.

## IV.
## Conclusion

Just as the Uniform Law Commission included a section permitting plaintiffs to make a Request in their initial pleading and then cure any insufficiencies by amending those pleadings, the Texas Legislature apparently intended to eliminate "traps for unwary plaintiffs" by adding section 73.062's abatement provisions to the DMA.[55] But if the legislature intended that abatement provide the defendant's sole remedy when a plaintiff fails to make a timely and sufficient Request, the legislature should not have included the UCCDA language stating that a plaintiff "may maintain an action only if" the plaintiff makes a timely and sufficient Request. Whether by mistake or not, section 73.062 allows abatement only when the plaintiff has failed to make a "written [R]equest," as section 73.055 requires, and nothing in section 73.062 permits the plaintiff to make a Request that is untimely. This construction reflects the different language used in each of the relevant sections and gives meaning to them all.

I agree with the Court's plurality that the court of appeals erred in holding that section 73.055(a) requires that Hogan's claims based on the nine additional statements be dismissed. But

---

[55] UCCDA § 3 cmt.

because I do not agree with its reasoning or with its construction of the DMA, I respectfully concur only in the judgment.

                                                _____

                                                Jeffrey S. Boyd
                                                Justice

Opinion delivered: June 4, 2021